13480

LEAPHART v. NATIONAL SURETY COMPANY

(166 S. E., 415)

328

*Messrs. Tobias & Turner,* for appellant,

*Messrs. Timmerman & Graham* and *P. F. Henderson,* for respondent,

October 4, 1932.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

The plaintiff, Florence (Powell) Leaphart, commenced this action in the Court of Common Pleas for Aiken County in the year 1927 against the defendants Palmetto Trust Company and National Surety Company, for the purpose of recovering from the Palmetto Trust Company, a corporation under the laws of the State of South Carolina, as trustee for the plaintiff, the sum of $20,000.00, and interest, "alleged to have been dissipated and lost by the trustee while acting as such for the plaintiff, *cestui que* trust," and also to obtain judgment in the sum of $10,000.00, and interest, against the other defendant, National Surety Company, as surety upon the bond of the Palmetto Trust Company, the plaintiff's trustee. Among the allegations of fact set forth in the plaintiff's complaint, she alleged the intrusting of a fund of $50,000.00 to the Palmetto Trust Company under a settlement had, in pursuance of proceedings entitled James Powell against C. J. Hill et al., instituted in Aiken County, S. C., in which the respondent in the case at bar, then Florence Powell, daughter of James Powell, plaintiff in the Aiken proceedings, received this sum, to be held in trust by the said Palmetto Trust Company, under conditions set forth in the trust agreement. The plaintiff further, in her complaint, alleges the administration of the fund, and the subsequent dissipation of so much as $20,000.00 "account investment by the respondent's trustee of that sum in a second mortgage—which proved to be worthless."

The Palmetto Trust Company filed no answer in the case. In fact, it appears from the transcript of record that said company ceased to function as a going concern prior to the time of the commencement of this action.

As stated in the agreed statement of counsel, set forth in the transcript of record, the defendant National Surety Company alleged, among other things, "the cessation of the trust; the failure of notice to the surety of the death of James Powell—when the trust is alleged to have terminated; the continuance after the death of James Powell of the Palmetto Trust Company, not as trustee, but as agent, designated and selected by the *cestui que* trust; and, thereafter, the designation and selection of I. M. Mauldin as agent of the *cestui que* trust; and his administration of the trust estate"; and, further, alleged "that of all of the acts and doings of the *cestui que* trust the surety has been kept in ignorance."

By consent of the parties, the case, by order of the Court, was referred to Hon. Edward S. Croft, Master for Aiken County, for the purpose of taking the testimony and passing upon all issues in the cause. Pursuant to the said order, the Master took the testimony in the case and submitted the same to the Court, together with his findings of fact and conclusions of law. In view of the clear and full statement by the Master as to all issues, and for the purpose of a full understanding of the case, we quote herewith the following from his report:

"(1) James Powell being in failing health, both mental and physical, as a result of a litigation entitled *Powell v. Hill et al.* (judgment roll of Aiken County No. 4767) he was declared *non compos mentis* during 1920. Due and complete and wise arrangements were made for his tender care in the homes of two of his married daughters, Mrs. Hill and Mrs. Henderson, during the remainder of his life, and certain property arrangements were made by the Court. Amongst other things Fifty Thousand Dollars of her

father's money was awarded to his then unmarried daughter, Miss Florence Powell (now Mrs. S. J. Leaphart) who is hereinafter referred to as the plaintiff.

"(2) As the Court then evidently considered that the plaintiff was not sufficiently conversant with business affairs to act for herself, the Court provided that her money ($50,-000.00) should be turned over to a trustee, which trustee should give bond for the faithful performance of the trust.

"(3) The defendant, Palmetto Trust Company, was appointed trustee, and received fifty thousand dollars in cash, and the defendant, National Surety Company, became surety, the bond being in the sum of ten thousand dollars.

"(4) The terms of the trust *inter alia* were:

" 'To the Palmetto Trust Company absolutely, as trustee for Florence Powell, upon the trust that the same be held for the benefit of the said Florence Powell during the life time of James Powell, she receiving the income thereof during the same period (less any proper charge for handling) and she to receive the corpus thereof upon the death of her father. * * *

" 'The said trustee is to have the power to do all acts necessary to the proper handling of the said property, including negotiations, sale and reinvestment of any portion thereof, that may be proper in the discretion of the said Trustee; * * *'

"(5) James Powell died September 8, 1922.

"(6) Shortly thereafter the Trust Company acting by and through its Vice-President, I. M. Mauldin (now deceased), sent securities amounting to fifty thousand dollars, all of which were then good, to the bank of Western Carolina of Aiken as its agent, for delivery to plaintiff who then lived in Aiken. The bond, however, read in favor of the Clerk of Court (Thomas T. Cushman), and it seems that the Trust Company made no arrangements for obtaining his receipt. Neither the officer of the Bank of Western Carolina who handled the matter—Mr. Muckenfuss, nor

Mr. Cushman were called as witnesses, and what happened between them is not in evidence. Certain, it is, however, that when plaintiff applied to the Bank of Western Carolina for her securities, that bank, which was acting as agent for the Trust Company, utterly refused to deliver the securities to the plaintiff and returned them to the Trust Company in Columbia.

"(7) The Trust Company made no further effort whatever to deliver the securities to its ward, nor to account to her nor to the Court, nor to Cushman, the Clerk of Court, for its actings and doings as trustee, although plaintiff testifies, and I find it to be a fact, that she then wished her property and remonstrated with the Trust Company for not delivering her securities to her. This was in October, 1922.

"(8) Plaintiff then seems to have acquiesced in the situation, and the Trust Company for reasons of its own, which certainly have not appeared in the testimony, refrained from taking any further steps toward an accounting and toward delivering its ward's property and ridding itself of its trust, although Mr. Powell had died and it could have done so legally. To the contrary plaintiff's testimony and the letters of the Palmetto Trust Company to plaintiff, which appear fully in the record, show that the Trust Company deliberately determined and elected in the fall of 1922, and after Mr. Powell's death to continue to act in the same manner as previously as plaintiff's trustee. The Trust Company actually paid her income on the whole of her fund until May 15, 1926.

"(9) The position that after Mr. Powell's death, I. M. Mauldin personally was the trustee or agent is untenable. The testimony and the correspondence especially and the statements of income rendered to plaintiff, show clearly that the Palmetto Trust Company was the trustee.

"(10) Prior to 1926 and while the Trust Company was solvent, both before and after Mr. Powell's death, the

National Surety Company had collected the premiums on the bond from the Trust Company, which in turn had charged it against plaintiff. During 1926, the Surety Company collected two premiums directly from plaintiff, having written letters directly to her soliciting their payment. The Surety Company then assured plaintiff's husband that the bond was in good standing. The Surety Company has not returned nor endeavored to return any of the premiums paid to and collected by it since Mr. Powell's death.

"(11) During the fall of 1922, the Trust Company invested twenty thousand dollars of its ward's money in the purchase from Palmetto National Bank of a second mortgage executed by Southern Motor Company of Greenville known as the South Main Street property and the Washington Street property. There were first mortgages upon these properties amounting to fifty thousand dollars in principal.

"(12) I. M. Mauldin, who attended to the whole matter, was an officer of the Trust Company, and an officer of the Southern Motor Company, the mortgagor, and an officer of the mortgagee, the Palmetto National Bank.

"(13) Further than this the Palmetto Trust Company was a component part of the Palmetto National Bank, as is shown by the stock certificates of said bank, which carried a pro rata stock interest in the Palmetto Trust Company. By the terms of the stock certificates the Trust Company was controlled solely by the directors and officers of the Bank and a transfer of a pro rata interest in stock in the trust company. While the bank was incorporated under the laws of the National Government and the Trust Company under the laws of the State Government, the interests of the two were identical and inseparable; to all intents and purposes they were one and the same business organization.

"(14) The Trust Company, in August, 1922, had two real estate agents appraise the property covered by the Motor Company's mortgage. They reported the property as

worth an aggregate of one hundred and ten thousand dollars, subject to two first mortgages of fifty thousand dollars. No further appraisal or inquiry as to value appears, when the paper was passed on to plaintiff in the fall of the same year.

"(15) In 1926 the Trust Company becoming insolvent, thirty thousand dollars in securities and cash were transmitted and paid to plaintiff and were accepted by her. An effort was made to get her to accept the Motor Company mortgage, it having been physically sent to her in the mail. She refused to accept said mortgage and her counsel, Mr. George Bell Timmerman, finally made a stipulation with Mr. Mauldin as an officer of the Trust Company, that the plaintiff should retain the mortgage and endeavor to collect upon it, but should credit the Trust Company only with the amount actually collected. Nothing has been collected.

"(16) The holders of the first mortgage brought foreclosure. Plaintiff set up her mortgage in the proceeding, pleading specifically her agreement with the Trust Company hereinbefore adverted to. The property was sold in 1928 and bought in by the holders of the first mortgage for a nominal consideration. The purchaser has repeatedly offered the property for sale at the amount of his mortgage, but with no taker.

"(17) I further find that the investing of plaintiff's Twenty Thousand Dollars in the Motor Company mortgage was not the exercise of the diligence required of a trustee investing its ward's money. No inspection of the property was made in 1922 by the Trustee. The value of the appraisal of the property at one hundred and ten thousand dollars disappears when one of the real estate agents testified that since 1922 there has been no appreciable depreciation in the value of the property and the other testified that the depreciation has been but twenty-five per cent. In either event with one hundred and ten thousand dollars as a starting point, the plaintiff's mortgage would be good. As a fact,

the first mortgagee has been forced to take the property in and cannot realize his fifty thousand dollars thereon. And one of the appraisers stated that his figures were based on the speculative value of the property. Beside all of this the other testimony shows that the rents on the property never bore out any such valuation, or any valuation sufficient to make the property good security for a twenty thousand dollar second mortgage. I must agree with plaintiff's witnesses in their conclusions that the mortgage was never one of value. The conclusion is inevitable that Mr. Mauldin, an officer of the Motor Company, was using his bank to finance his motor company, at the expense of the ward of his Trust Company.

"(18) Plaintiff did not acquiesce in the investment of her money in the Motor Company mortgage. When it was done she was unmarried, was as she expressed it 'an unsophisticated girl.' She relied implicitly in the judgment of her trustee, and as soon as she heard that a second mortgage had been acquired, she strenuously objected.

"Applying the foregoing fact to the law, I further find and report:

"(a) That the original trust, the property being personalty, did not automatically become vested upon Mr. Powell's death. An accounting and a delivery of the securities was incumbent on the trust company, which elected to stop short of this; and to continue the trust under its original terms.

"(b) That the trust has been breached in the following particulars:

"(1) The original investment of the twenty thousand dollars in the Motor Company mortgage did not measure up to that 'reasonable diligence and care * * * to insure the safety of the investment' required by the Supreme Court of South Carolina in *Poole v. Bradham*, 143 S. C., 156, 161, 141 S. E., 267, 269.

"(2) A Trustee's investment of his ward's money must be, if in mortgages, 'in mortgages upon unencumbered prop-

erty, certainly unless there is overwhelming value present. *Nance v. Nance,* 1 S. C., 209; *Cureton v. Watson,* 3 S. C., 451, 457; *Seigler, v. Seigler,* 7 S. C., 317, 324; *Singleton v. Lowndes,* 9 S. C.; 465, 489; Editorial note to 132 Am. St. Rep., 389. The wisdom of this rule is vindicated by the happenings in this case. When there was some depression in values the holder of the first mortgage foreclosed, immediately, interest was added, costs were added, attorneys' fees were added. Plaintiff, whose entire other fortune was thirty thousand dollars, was forced into an untenable situation which brought about an entire loss of her twenty thousand dollars.

"(3) A trustee may not invest his ward's money in his own property. This wise rule does not look even to the value of the investment. It stamps the transaction as a fraud and makes it utterly void at the election of the ward, *McCallum v. Grier,* 86 S. C., 162, 68 S. E., 466, 138 Am. St. Rep., 1037; *Duncan v. City of Charleston,* 60 S. C., 532, 39 S. E., 265; *Scottish American Mortgage Co. v. Clowney,* 70 S. C., 229, 49 S. E., 569, 3 Ann Cas., 437; *Sumter Trust Co. v. Moses,* 116 S. C., 446, 107 S. E., 918; *Michoud v. Girod,* 4 How., 530, 11 L. Ed., 1076. Plaintiff herein has elected within reasonable time after discovering the investment, to repudiate it.

"(c) The Surety Company is bound. It has failed to see to it that the Trustee account to plaintiff upon her father's death, which act was necessary to a completion of the trust. It has since that time actively continued to collect its premiums and it has not even attempted to return them.

"I report that plaintiff is entitled to judgment against Palmetto Trust Company for the sum of twenty thousand dollars, with interest from May 15, 1926, at seven per cent; and to judgment against National Surety Company for ten thousand dollars, with interest from May 15, 1926, at seven per cent; the bond herein being the joint and several

obligations of said defendant; costs should also be awarded plaintiff."

From this report, the defendant National Surety Company appealed, and the case was heard on the National Surety Company's exceptions to the Master's report, by his Honor, Judge T. S. Sease, who, after due consideration, issued an order confirming the report as a whole. From the said order of his Honor, Judge Sease, the National Surety Company has appealed to. this Court; the Palmetto Trust Company, as stated, having made no appearance in the case.

The allegations of error imputed to the trial Judge by appellant are set forth under eleven exceptions, but, in the presentation of the case to this Court, counsel for appellant present the issues raised under five questions, which we shall consider in the order presented.

## QUESTION No. I

"In a fixed trust, does the happening of the event ▮ named in the trust cause the termination of the trust?"

In discussing this question, appellant calls attention to the following provision contained in the trust agreement: "To Palmetto Trust Company absolutely as trustee for Florence Powell, upon the trust that the same be held for the benefit of the said Florence Powell *during the lifetime of James Powell* (italics ours), she receiving the income therefrom during the said period (less any proper charge for handling) and she to receive the corpus thereof upon the death of her father."

In this connection we also quote the following from the trust agreement, referred to in the Master's report: "The said trustee is to have the power to do all acts necessary to the *proper handling* of the said property, including negotiations, sale and reinvestment of any portion thereof, *that may be proper* in the discretion of the said Trustee. * * *".

According to our understanding, it is the position of appellant that the trust in question is a fixed trust, and under

the terms of its creation its duration was limited to the death of Mr. Powell, at the happening of which event there was a termination of the trust, and the *cestui que* trust, by operation of law, became the absolute owner of the fund in question, and that no action will lie against the National Surety Company, as surety upon the bond of the trustee, Palmetto Trust Company. In this connection, appellant quotes the following from 26 R. C. L., 1210, also cites other authorities: "On the termination of the period of time which an active trust is limited by the terms of its creation, a trust ceases, and the estate becomes invested in the parties entitled thereto at that time, by operation of law, and without a conveyance."

Further: "Whatever may be the limitation imposed by an instrument which creates an act of Trust, and whatever estate the trustee takes in the beginning, the legal estate is divested out of him, and passes into the *cestui que* trust on the instant that the duties and powers of the trust *for any cause* (italics ours) cease to be active, or cease to require legal title in the trustee."

It is true, the happening of the event named in the trust would have caused the termination of the trust if the trustee had delivered to the *cestui que* trust the property in question, which, as contended by respondent, is personal in character. But the trustee did not do this, having only delivered to the *cestui que* trust a part of the property, failing to account for $20,000.00. Under our view of the case, there could be no termination of the trust without a full accounting by the trustee, Palmetto Trust Company, and hence no escape from liability by the National Surety Company, as surety on the bond of such trustee. Upon the death of Mr. Powell, it became the duty of the trustee to make a full accounting to the *cestui que* trust for the $50,000.00 received as such trustee, and, having failed to do so, the trust was not executed, for there was something left for the trustee to do. In this connection we call attention to the

following South Carolina cases: *Farr v. Gilreath*, 23 S. C., 502, 512; *Huckabee v. Newton*, 23 S. C., 291, 295; *Steele v. Smith*, 84 S. C., 464, 469, 66 S. E., 200, 29 L. R. A. (N. S.), 939; *Harley v. Platts*, 6 Rich. Law (40 S. C. L.), 310.

## Question No. II

"If a trustee performs the duties imposed upon him under the terms of the trust, will a subsequent arrangement between the trustee and the *cestui que* trust revive the trust and render the surety liable?"

In answer to this question, we deem it sufficient to call attention to the fact that the question assumes that the trustee performed the duties imposed upon it under the trust, whereas, the finding of the Master, confirmed by the Circuit Judge, is opposed to this position, and, we may add, under the evidence is clearly appears that the trustee did not perform the duties imposed upon it under the terms of the trust. The evidence clearly establishes that the Palmetto Trust Company, trustee, invested the sum of $20,000.00 of the funds in question in a *second* mortgage, owned by the Palmetto National Bank, and, further, there was testimony tending to show that the Palmetto Trust Company was a subsidiary of the said bank, and, further, that the two corporations apparently were managed by the same officers. We think that the record amply supports the Master's finding. It is thus seen that question No. 2 is a moot question, for under no view of the record can it be successfully contended that the trustee performed its duty, under the terms of the trust agreement, and therefore it should not be assumed, as appellant has done, that the trustee did perform its duty under the trust. However, we may state, under our view of the evidence, disclosed by the record, the appellant failed to establish that the *cestui que* trust entered into a subsequent agreement, as the trustee contends she did. In this connection, we may further state that the *cestui que* trust emphatically denied that she entered into the alleged subsequent agreement.

### Question No. III

"If a surety collects premiums on the bond after the termination of the trust of which it had no knowledge, can it be held liable to the *cestui que* trust for the default of a third party, acting as the agent of the *cestui que* trust, or as trustee *de son tort?*"

In the statement of this question, as in question No. II, the appellant assumes that the trust had terminated. As stated above, we are unable to agree with this position, but, on the other hand, we think that the trust had not terminated for the reasons we have assigned in our discussion of question No. I. Furthermore, it appears that the appellant not only demanded but received premiums on the bond in question after the death of Mr. Powell and after the failure to pay over to Miss Powell (now Mrs. Leaphart) the trust property. Even if the premiums demanded on the bond, after the death of Mr. Powell, had not been paid, under our view of the case, the surety would nevertheless be liable for the default of the trustee, for the reason that the default on the part of the trustee had already occurred. The trustee had, prior thereto, failed to account for as much as $20,000.00 of the fund in question. Furthermore, when this was taking place, that is, when the surety was demanding and receiving premiums on the bond, the trustee, the surety's principal, knew of Mr. Powell's death. Under our view of the case, it was not necessary for the respondent to prove that the surety knew of such fact. We may add, also, that, so far as we have been able to ascertain from the record, there is no affirmative proof that the surety did not have knowledge of the death of Mr. Powell, and it appears that the surety company did have knowledge as early as 1924 or 1925, that the bond in question was in existence, and therefore should have investigated the matter. Furthermore, as pointed out in our consideration of question No. I, there could be no termination of the trust until there was a com-

pliance with the terms of the same, and, as shown, the trustees had failed to account to the *cestui que* trust for the sum of $20,000.00.

## QUESTION No. IV

"Is a trustee, and, inferentially, its surety, liable to the *cestui que* trust when the trustee used due diligence in investing trust funds?"

In framing this question, appellant assumes that due diligence was used in investing the trust fund, whereas the Master and the Circuit Judge reached a different conclusion as to the facts in the case. As pointed out in our consideration of the foregoing questions, the record in the case, in our opinion, amply sustains the Master and the Circuit Judge. The investing of the funds of the *cestui que* trust in a second mortgage is not, in our opinion, especially under the facts of this case, a proper exercise of the power and authority conferred under the trust, and shows an utter lack of interest in and care for the rights of the *cestui que* trust.

## QUESTION No. V

"Can a surety be held liable for a sum in excess of the amount specifically provided as the penalty in the bond?"

Judgment was awarded against the appellant, National Surety Company, for the sum of $10,000.00, with interest thereon from May 15, 1926, at the rate of 7 per cent. per annum; and the issue intended to be raised by the above-stated question involves the question of interest, it being the contention of appellant that, even if the Court should hold that it is liable on the bond, in no event is it liable for interest, for the reason, as it contends, the amount of the bond is fixed at $10,000.00.

At the threshold of our consideration of this question, we are confronted with the question raised by the respondent's contention that the question of interest is not properly be-

fore this Court, for the reason that that question was not raised in the lower Court. The appellant filed exceptions to the Master's report, and, while it is clear that the question of interest was not specifically mentioned in the exceptions to the Master's report, it is the appellant's contention that exception 12 to the Master's report is broad enough to cover it. That exception was worded as follows: "That the Master erred in finding that the National Surety is in any way indebted to the plaintiff, said findings of the Master being contrary to the law and evidence in the case."

The judgment against the appellant is severable. It consists of two parts, judgment for $10,000.00, and for interest on said amount from May 15, 1926. The Circuit Judge, if he had seen fit and thought the law warranted it, could have confirmed the Master's report as to the judgment for $10,000.00 and reversed the Master as to the matter of interest. In our opinion, under the practice and rules of force in our Courts, the appellant, in excepting to the Master's report, should have called specific attention to the question of interest, if it was the intention of raising that question, so that the Judge who heard the cause would have known the allegations of error intended to be imputed to the Master, as to his findings of fact and conclusions of law on all matters material to the case. It is not fair to a Circuit Judge to permit a party appealing to this Court from judgment in the Circuit Court to raise questions, such as the question under consideration, not specifically raised before the Circuit Judge. In our opinion, the question of interest is not properly before this Court, for the reason that, under our view of the record, it was not raised in the lower Court. This is not a question of .affirming the lower Court on additional grounds. But, even waiving the objection raised and considering the question on its merits, which the Court may do in cases of the nature of the case at bar, the appellant's position cannot prevail, for, under our view of the case, the respondent is entitled to interest as a matter

of right and under the general law applicable. It is true, as contended by appellant, the amount named in the surety bond, for which the surety was liable in case of the failure of the trustee to perform the duties imposed under the trust was only $10,000.00; but, when it became known that the trustee had failed to perform the duties imposed under the trust and had defaulted in paying to the *cestui que* trust the sum of $20,000.00 of said fund, the appellant, as surety on the trustee's bond, then and there became liable to the *cestui que* trust for said default, to the extent of the amount named in the bond, not $20,000.00, but $10,000.00, and, demand having been made upon the surety for said sum, from that time on the *cestui que* trust was entitled to interest on said amount of $10,000.00, at the rate of 7 per cent. per annum. If the surety had paid the money promptly, of course no interest would have accrued. The date fixed by the lower Court, May 15, 1926, for interest to begin, is supported by the record. At that time, it appears, the default occurred as to $20,000.00 of the trust fund, and the surety failed to pay the amount for which it was liable. It is the contention of appellant that the demand of the respondent was not such as to entitle her to interest. We agree with the finding and holding of the lower Court, and think the appellant liable for interest. In this connection counsel for respondent call our attention to Section 4273 of Volume 3 of the Code of 1922, which section makes corporations liable for interest on all claims after a certain time. We do not base the holding herein stated and conclusion herein expressed on that provision of the law, but prefer to rely on the law applicable alike to all persons, natural persons as well as a body corporate. There is no question that interest is not recoverable on an unliquidated account, but, on the other hand, it is the accepted law that a liquidated claim draws interest, and, furthermore, it is not necessary that the claim be reduced to judgment in order to be subject to interest, but, as stated in the opinion

in the case of *Ancrum v. Slone,* 2 Speers, 594, interest is allowable "if the sum is certain or capable of being reduced to a certainty, from the time when, either by the agreement of the parties or the construction of law, the payment was demandable." We can see no good reason why this rule of law should not be applicable in the case at bar. In the case at bar the amount for which the surety was responsible was known to all parties May 15, 1926, and at this time demand was made or had been made upon the surety for payment, but payment was not made, that is, the appellant defaulted, failing to comply with the conditions of the bond, and in our opinion interest should be allowable on the said sum of $10,000.00 from that time on at the legal rate, 7 per cent. per annum. The rule applies to individuals and as a matter of justice and right should apply to corporations, including the defendant herein. In connection with the positions stated, we call attention to the opinion written by Mr. Justice Stabler, as the organ of this Court, in the recent case of *Columbia Lumber. & Mfg. Company v. Globe Indemnity Company,* 166 S. C., 408, 164 S. E., 916, and authorities therein cited, including the case from which we have quoted above, reported July 16, 1932, in Westbrook's Advance Sheets.

While the cases are not in accord on all questions discussed herein, the position we have taken is well supported by the authorities, and, in our opinion, is in accord with justice and right. In this connection we call attention to the case of *American Surety Company v. Pacific Surety Company,* and authorities therein cited, reported in 81 Conn., 252, 70 A., 584, 19 L. R. A. (N. S.), 83, and also call attention to the notes in said case. Also, as having a bearing on the questions involved in the case, we call attention to 4 R. C. L., 68, and to 9 C. J., 132.

The exceptions must be overruled, and it is the judgment of this Court that the judgment of the Circuit Court be, and is hereby, affirmed.

MR. CHIEF JUSTICE BLEASE, and MESSRS. JUSTICES STABLER and BONHAM concur.