**R.C. McENTIRE & COMPANY, Appellee,**

v.

**EASTERN FOODS, INC., Appellant.**

**No. 81–2027.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 9, 1982.

Decided March 10, 1983.

Rehearing Denied April 19, 1983.

Edward M. Woodward, Jr., Columbia, S.C. (Edward M. Woodward, Woodward &

* Hon. James H. Michael, Jr., United States District Judge for the Western District of Virginia,

Unger, Columbia, S.C., on brief), for appellant.

Charles F. Carpenter, Jr., Columbia, S.C. (F. Barron Grier, III, Richardson, Plowden, Grier & Howser, Columbia, S.C., on brief), for appellee.

Before RUSSELL and WIDENER, Circuit Judges, and MICHAEL,* District Judge.

MICHAEL, District Judge.

In this appeal Eastern Foods, Inc. [hereinafter "Eastern"] challenges the district court's judgment entered in favor of R.C. McEntire & Company [hereinafter "McEntire"], for the remaining balance of an open account owed McEntire by B & B Produce Processors [hereinafter "B & B"]. Eastern's principal contention is that the trial court erred in permitting McEntire to recover on a theory of *de facto* merger, or transferee liability, where McEntire's complaint sought recovery on grounds of fraud and breach of contract. In addition, Eastern submits that even if the trial court properly submitted the issue of *de facto* merger to the jury, the court erred in charging an inappropriate measure of damages. Eastern also challenges the trial court's award of prejudgment interest. Finding no reversible error, we affirm the judgment of the district court.

In February, 1978, a course of dealing began between McEntire and B & B, processors of produce for fast food restaurants, where McEntire supplied B & B with produce on an open account arrangement. By August 1978, B & B, which was operated by Dick Bowers and Ralph Davis, owed McEntire $115,896.50 on the open account. McEntire decided to put B & B on a COD basis and to attempt to establish a system of payments. Being unsuccessful, McEntire lodged an informal complaint against Bowers and B & B on August 30, 1978, with the United States Department of Agriculture

sitting by designation.

[hereinafter USDA].[1] Shortly after the complaint was lodged, Eastern took a number of steps leading to the takeover of B & B. Both Eastern and B & B began negotiations with McEntire designed to abate any efforts by McEntire to press his claim before the USDA.

On September 12, 1978, the USDA acknowledged McEntire's informal complaint. On September 13, 1978, Bowers and B & B got $50,000 from Eastern and signed a note. At about this time, Bowers agreed to pay off the account balance and began making payments at the rate of $2,000 per week. On September 22, 1978, the USDA wrote McEntire and explained the procedures for filing a formal complaint against B & B.

During the period from mid-September until mid-October 1978, the party with whom McEntire was dealing began shifting from B & B to Eastern. Eastern drafted a set of documents which on their face purported to be an agreement to manage B & B, coupled with an option to buy. Mr. McEntire had several telephone conversations with Mr. Bellamy, Vice President of Eastern, concerning Eastern's agreement to take responsibility for B & B's $2,000 a week payment in exchange for McEntire's agreement not to pursue his complaint with the USDA. Mr. McEntire made a trip to Atlanta in order to meet with Mr. Bellamy, to inspect Eastern's facilities, so that McEntire might be satisfied as to Eastern's ability to comply with the agreement.

On September 29, 1978, a management agreement was signed giving Eastern control over B & B and an option was signed that same date giving Eastern the right to buy B & B. On October 1, 1978, a restated management agreement was signed giving Eastern virtually total control over B & B.

On October 13, 1978, McEntire wrote the USDA and asked it to hold his complaint in abeyance. On October 18, 1978, Dick Bowers sent the USDA a letter written by Mr. Abbott, an Eastern official, advising:

The following arrangements have been agreed upon by R.C. McEntire, Eastern Foods and B & B Produce. B & B Produce and Eastern Foods are venturing into a merger of our companies. Eastern Foods met with Buddy McEntire and made financial arrangements satisfactory to R.C. McEntire.

McEntire also signed a document entitled, "Irrevocable Offer", which gave Eastern the option to liquidate the unpaid balance at a fifty (50%) percent discount. The document, which was prepared and presented by Eastern, purports to run from McEntire to B & B but was never signed or acted upon by Eastern or B & B.

On October 24, 1978, the USDA wrote McEntire, advising that it would set aside its file until November 5, 1978, in response to McEntire's request to hold his complaint in abeyance. McEntire and Eastern continued their discussions and Eastern continued to honor its agreement to pay McEntire $2,000 per week. The checks were sent from Eastern in Atlanta and written against a bank account of Eastern's in Charlotte, North Carolina, set up in the name of "Bell and Brooks". Bellamy, Vice President, and Brooks, President, were the two principals at Eastern who dealt with McEntire. On November 17, 1978, McEntire was persuaded to extend the "Irrevocable Offer" which had expired on November 15, 1978.

During this period of time, Eastern began rapidly absorbing B & B. Mr. Bowers and Mr. Davis were introducing Eastern personnel to their Hardee's contacts, B & B's principal account, and explaining that B & B was merging with Eastern. B & B employees went on the Eastern payroll and the two entities consolidated their warehouse operations into one. Vehicles of B & B were used by Eastern, and, finally, the Hardee's account was taken over by Eastern.

While Eastern completed the merger and secured the Hardee's account, it paid the original outstanding balance of $115,896.50 down to $88,771.50. However, once the merger was complete, and the Hardee's

---

1. In response to such a complaint, the USDA has the power to suspend the right of a buyer to do business in the perishable commodities market unless he satisfies his debts.

account secure, Eastern ceased making payments to McEntire. As a result, McEntire brought this action against Eastern on theories of fraud and breach of contract.

At the conclusion of all the evidence, counsel for McEntire moved for a directed verdict on the issue of breach of contract, but asserted that it was not necessary to reach that issue because there had been a merger of B & B. Counsel for Eastern moved for a directed verdict on the causes of action for fraud and breach of contract, and argued that there was no issue of merger in the case, because it had neither been pled nor tried by consent. To that contention, the trial judge pointed out that if there was a *de facto* merger then, as an operation of law, one has a contract. Whether there has been a *de facto* merger, the court pointed out, was a question of fact, and thus the jury was charged on that issue.

■ All motions were denied and trial judge instructed the jury on breach of contract, fraud, and merger. The jury returned a verdict in the amount of $88,-771.50, together with interest from November 30, 1978, the date of the last $2,000 payment from Eastern to McEntire. Eastern moved for judgment notwithstanding the verdict or, in the alternate, for a new trial. The trial judge denied Eastern's motion on the grounds that there was adequate evidence to support a verdict for actual damages for breach of contract or a verdict of actual damages flowing from a *de facto* merger or consolidation. In so holding, the trial judge pointed out that paragraphs 5 and 8 of the plaintiff's complaint, although within that portion of the complaint alleging common law fraud, set forth facts sufficient to put the defendant on notice of plaintiff's theory of *de facto* merger. The trial judge also pointed out that Eastern had actual notice of the *de facto* merger theory because they secured the services of a law school professor for the purpose of acting as an expert witness on the merger issue. Eastern also deposed McEntire's expert witness on the merger issue and McEntire's trial counsel mentioned merger in his opening. After a careful review of the entire record in this proceeding, it cannot be said that the trial judge erred in so holding. It is clear from the facts recited that Eastern had notice of the merger issue, was not surprised by it, and, indeed, even prepared for it. In addition, McEntire's agreement to forego prosecution of its complaint before the USDA in exchange for Eastern's weekly payments is sufficient consideration to support McEntire's breach of contract claim.

■ Next, Eastern contends that the trial judge erred in charging the jury on an inappropriate measure of damages. Eastern argues that McEntire's recovery is by law limited to the value of B & B's property Eastern received in the takeover. In support of this proposition, Eastern cites the South Carolina case of *Beckroge v. South Carolina Power Company,* 197 S.C. 184, 15 S.E.2d 124 (1941). In *Beckroge* it was held that where a power company received assets from a gas company for no consideration, the gas company's creditors could follow those assets into the hands of the purchasing corporation to the extent of their value. This theory of damages, the so-called trust fund theory of damages, is a correct principle of law, however, it has no application in the present case. Upon the consolidation or merger of two corporations, the transferee or successor corporation remains fully liable for the liabilities of the transferor corporation. The distinction between the trust fund theory of damages and the merger theory of damages is that in the former you have a purchase or acquisition of another company's property where, in the latter, you have a consolidation or merger of the two companies. 19 Am. Jur.2d *Corporations,* § 1554. As noted, the facts here established a merger.

■ We are also unable to find error in the trial court's allowance of prejudgment interest in this case. South Carolina law allows an award of prejudgment interest where the amount sued for is a liquidated amount. *Knight v. Sullivan Power Company,* 140 S.C. 296, 138 S.E. 818 (1927); *Leaphart v. National Surety Co.,* 167 S.C. 327,

166 S.E. 415 (1932). The amount sought by McEntire, and the verdict returned by the jury, was a sum certain at the time Eastern made its last payment and the balance was due. Accordingly, under South Carolina law, the award of prejudgment interest was proper.

AFFIRMED.