UNITED STATES of America,
Plaintiff–Appellant,

v.

AMERICAN MANUFACTURERS MUTU-
AL CASUALTY COMPANY, an Illinois
corporation; Lumbermens Mutual Cas-
ualty Company, an Illinois corporation;
United States Fidelity & Guaranty
Company, a Maryland corporation, De-
fendants–Appellees.

UNITED STATES of America,
Plaintiff–Appellee,

v.

AMERICAN MANUFACTURERS MUTU-
AL CASUALTY COMPANY, an Illinois
corporation; Lumbermens Mutual Cas-
ualty Company, an Illinois corporation;
United States Fidelity & Guaranty
Company, a Maryland corporation, De-
fendants–Appellants.

Nos. 88–1712, 88–1724.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 11, 1989.

Decided March 9, 1990.

Rehearing Denied April 6, 1990.

Michael James Roach (William S. Rose, Jr., Asst. Atty. Gen., Gary R. Allen, William S. Estabrook, Tax Div., U.S. Dept. of Justice, Washington, D.C., Vinton DeVane Lide, U.S. Atty., Columbia, S.C., on brief), for plaintiff-appellant.

Alice F. Paylor (Rosen, Rosen & Hagood, Charleston, S.C., on brief), for defendants-appellees.

**PER CURIAM:**

Pursuant to the provisions of the Miller Act, 40 U.S.C. § 270a *et seq.*, the United States brought this action to recover for federal withholding taxes due on certain bonded government construction contracts. The named defendants were all sureties of Merritt Dredging Company, Inc. ("Merritt"), a now bankrupt construction concern, employed by the United States Army Corps of Engineers ("Army Corps") during the fourth quarter of 1983 and the first quarter of 1984 to perform dredging services. Upon motion for summary judgment, the district court ruled in favor of the United States and against the sureties. The government's recovery was limited to only that tax which had accrued under these contracts and no recovery was allowed for the penalties and prejudgment interest. An allowance of 6.71 percent rate was granted for post-judgment interest. We affirm in part and reverse in part.

**I.**

The taxpayer, Merritt, entered into six dredging contracts with the Army Corps. As required by the Miller Act, Merritt furnished the government with performance bonds securing its obligations.[1] These bonds were executed by the defendants United States Fidelity & Guaranty Co. ("USF & G"), Lumbermens Mutual Casualty Company ("Lumbermens"), and American Manufacturers Mutual Casualty Company ("American Manufacturers").[2] On January 31, 1984, Merritt filed its quarterly

---

1. Section 270a(a) provides, in pertinent part: Before any contract, exceeding $25,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States [secured bonds], which shall become binding upon the award of the contract to such person....

2. The surety obligations on the contracts are summarized as follows:

| Contract | Surety | Co–Surety | Quarter |
|---|---|---|---|
| DACW01–83–C–0105 | Lumbermens | None | 4th Qtr. 1983 |
| DACW01–83–C–0112 | Lumbermens | None | 4th Qtr. 1983 |
| DACW65–83–C–0056 | Lumbermens | None | 4th Qtr. 1983 |
| DACW60–83–C–0032 | USF & G | Lumbermens | 4th Qtr. 1983 |
| DACW01–83–C–0187 | USF & G | Lumbermens | 4th Qtr. 1983 |
| DACW60–84–C–0002 | USF & G | American Manufacturers | 1st Qtr. 1984 |

employment tax return for the fourth quarter of 1983. On that return, Merritt reported a total tax liability of $394,786.82.[3]

Before any of these taxes were paid, Merritt filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 1101 *et seq.* In order to recover these tax dollars, the Internal Revenue Service ("IRS") moved against the sureties. The IRS sent out three letters, one dated April 24, 1984; one on June 20, 1984; and the last on June 21, 1984, informing the sureties of their tax liability.[4] In addition, the IRS asserted that each of the sureties was liable for interest and penalties accrued as a result of Merritt's non-payment. The district court disagreed and only allowed recovery of taxes collected, deducted or withheld from wages paid when work was being performed on the contract.[5]

Both sides now appeal.

## II.

We must resolve two issues: first, whether a surety, bonded pursuant to the provision of the Miller Act, may be liable to the IRS for pre-judgment interest and penalties accrued on tax money withheld by a defaulting contractor, yet not paid to the IRS when due; and, second, whether the IRS made a timely written notice to the sureties of its intent to seek payment on Merritt's delinquent tax obligation.

### *Pre–Judgment Interest*

 Under the Miller Act, whether to allow for the recovery of pre-judgment interest is a matter of federal law. *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 127, 94 S.Ct. 2157, 2164, 40 L.Ed.2d 703 (1974). Any decision of whether or not to award pre-judgment interest on a Miller Act Bond is committed to the sound discretion of the district court and will only be overturned upon a showing of abuse of that discretion. *United States v. Seaboard Surety Co.,* 817 F.2d 956, 965 (2d Cir.1987). If, however, neither the Miller Act nor any other applicable federal provision provides any explicit standards for the allowance of pre-judgment interest, it is treated as incorporating

---

**3.** Of this liability, $312,199.52 represented taxes withheld from the wages of its employees, including income tax and Federal Insurance Contributions Act obligations.

**4.** The IRS apportioned such liability as follows:

### 4th Quarter 1983

| Contract No. | Sureties | Amount |
| --- | --- | --- |
| DACW01–83–C–0105 | Lumbermens | $ 54,548.65 |
| DACW60–83–C–0032 | Lumbermens; USF & G | 29,776.38 |
| DACW65–83–C–0056 | Lumbermens | 14,374.78 |
| DACW01–83–C–0112 | Lumbermens | 73,921.94 |
| | TOTAL 4th Qtr. | $172,621.75 |

### 1st Quarter 1984

| Contract No. | Sureties | Amount |
| --- | --- | --- |
| DACW60–84–C–0002 | American Mfrs.; USF & G | $ 34,998.04 |
| DACW01–83–C–0187 | Lumbermens; USF & G | 82,424.79 |
| | TOTAL 1st Qtr. | $117,422.83 |
| | TOTAL both Qtrs. | $290,044.58 |

**5.** In calculating the amount due, the district court reviewed the dredge log books to determine exactly when Merritt was working on the bonded contracts. The logs showed that on certain dates during the fourth quarter of 1983 and the first quarter of 1984, the dredges were operating on jobs unrelated to these contracts.

the applicable state law on this issue.[6] *United States ex rel. Seminole Sheet Metal Co. v. SCI, Inc.,* 828 F.2d 671, 677–78 (11th Cir.1987); *United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc.,* 834 F.2d 1533, 1541–42 (10th Cir.1987); *United States ex rel. Canion v. Randall & Blake,* 817 F.2d 1188, 1193 (5th Cir.1987). We find in this case that the laws of South Carolina guide our analysis. *See United States ex rel. Weston & Brooker Co. v. Continental Casualty Co.,* 303 F.2d 91, 93 (4th Cir.1962).[7]

■ South Carolina has long held that an award of pre-judgment interest is to be allowed where the amount sued for is liquidated. *R.C. McEntire & Co. v. Eastern Foods, Inc.,* 702 F.2d 471 (4th Cir.), *cert. denied,* 464 U.S. 849, 104 S.Ct. 156, 78 L.Ed.2d 144 (1983); *Knight v. Sullivan Power Co.,* 140 S.C. 296, 138 S.E. 818 (1927); *Leaphart v. National Surety Co.,* 167 S.C. 327, 166 S.E. 415 (1932). The recovery sought here by the government became a sum certain at the time Merritt withheld income tax and FICA tax for work performed on the bonded contracts and can be calculated based on federal tax tables. Further, liability for payment of such taxes attached at the time the wages were paid.

■ The purpose of awarding pre-judgment interest is compensatory, not penal, *Rodgers v. United States,*[8] and should fairly compensate the aggrieved party. The entire structure of the Miller Act makes it clear that it was enacted to protect the United States Government from the loss it would have to bear as a result of a defaulting contractor's failure to meet all obligations. Timely payment of taxes is required by law. When such taxes are not timely paid, the government sustains a quantifiable loss that in this case can be measured by the amount withheld by Merritt for work done on the secured contracts. The recovery of interest on such delinquent funds fairly compensates the government for the loss of such monies as well as the expense incurred in retrieving it. We believe that the Miller Act requires a surety to bear the burden of compensating the government for the interest and penalties incurred on unpaid taxes when, as here, that amount is liquidated and the applicable state law allows for such recovery. The denial of that sum, if not for some other valid reason, constitutes an abuse of discretion on the part of the district court.

### Notice of Tax Liability

■ The sureties argue that regardless of the correctness of the district court's ruling with respect to pre-judgment interest and penalties, the government failed to meet its burden of notice and accordingly is not entitled to recover any unpaid taxes from the sureties. Section D of the Miller Act provides:

> Every performance bond required under this section shall specifically provide coverage for taxes imposed by the United States which are collected, deducted, or withheld from wages paid by the contractor in carrying out the contract with respect to which such bond is furnished. However, the United States shall give the surety or sureties on such bond written notice, with respect to any such unpaid taxes attributable to any period, within ninety days after the date when such contractor files a return for such period, except that no such notice shall be given more than one hundred and eighty days from the date when a return

---

Accordingly, taxes withheld on these days were not included in the award to the IRS.

**6.** Clearly, the Miller Act does not explicitly provide for the allowance of pre-judgment interest. We believe, however, that by allowing for recovery of taxes accrued, the Miller Act may implicate the provisions of the Federal Tax Code and its underlying policies and considerations. Because, however, we need not necessarily reach this question to resolve the matter before this court, we decline now to decide to what degree the provisions of the Miller Act and the Federal Tax Code are to be read together as compatible.

**7.** Merritt was incorporated in South Carolina. Each of the sureties was licensed to do business in South Carolina and part of the dredging work was done in the state.

**8.** 332 U.S. 371, 373, 68 S.Ct. 5, 6, 92 L.Ed. 3 (1947).

for the period was required to be filed under Title 26. No suit on such bond for such taxes shall be commenced by the United States unless notice is given as provided in the preceding sentence, and no such suit shall be commenced after the expiration of one year after the day on which such notice is given.

This provision is to be afforded liberal construction and application in order to effectuate Congressional intent. *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co., supra,* 417 U.S. at 124, 94 S.Ct. at 2162; *United States v. Aetna Casualty & Surety Co.,* 480 F.2d 1095 (8th Cir.1973).

On April 24, 1984, the United States sent written notice to each of the sureties concerning taxes owed from the fourth quarter of 1983. On June 21, 1984, the United States again sent written notice concerning taxes owed for the first quarter of 1984. It is conceded that both of these letters of notification satisfied the 90–day requirement. The sureties assert, however, that these letters did not provide "notice" as required by the Miller Act in that all of the amounts stated as being owed were substantially inaccurate; the April 24, 1984, letters did not inform the sureties of the amount owed for each bond; the April 24, 1984, letter to USF & G included bonds on which it was not a surety; and the April 24, 1984, letter to USF & G omitted a contract on which the United States subsequently stated that by way of letter not within the 90–day statutory period the sureties were liable.

 The purpose of the notice requirement of Section 270a(d) is to alert a surety of the principal's default on payment of its withholding taxes and that payment of the debt is expected from the surety. *United States ex rel. Jinks Lumber Co. v. Federal Ins. Co.,* 452 F.2d 485 (5th Cir.1971). This section does not require the government to detail with specificity the contracts, bonds, and amount of delinquent taxes. All the section requires is timely notice of the contractor's default so that the surety is aware that payment from such contractor is not forthcoming. *See United States v. Fidelity & Deposit Co. of Maryland,* 690 F.Supp. 905 (D. Hawaii 1988). The fact that the timely notice contains certain factual errors and imperfections does not relieve a surety from its legal obligation to perform.

Here, it is uncontested that the government made timely notice to the sureties of Merritt's default and that taxes were due under the performance bonds. We find such notice sufficient to satisfy the requirement of Section 270a(d).[9]

### III.

Because the notice by the government was statutorily sufficient to satisfy the requirements of the Miller Act, we find no legal obstacle to the imposition of liability for pre-judgment interest and penalties accrued as a result of Merritt's delinquency. Therefore, we find reversible error in the district court's failure to impose such liability and remand this cause for reconsideration in accordance with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.

---

**9.** For this reason, we find no merit to USF & G's argument that the letter dated April 24, 1984, was insufficient notice of tax liability because it made no mention of Contract DACW60–84–C–

0002. We have found no authority for the proposition that an all-inclusive breakdown of tax liability is necessary when a surety is notified by the government of contractor default.