14032

MARCHANT v. WANNAMAKER *ET AL.*

(180 S. E., 350)

*Mr. Wm. C. Wolfe,* for appellant,

Mr. *Adam H. Moss,* for respondents,

March 29, 1935.

The opinion of the Court was delivered by MR. C. J. RAMAGE, ACTING ASSOCIATE JUSTICE.

The facts underlying this appeal are that prior to the 9th day of January, 1931, the Edisto National Bank of Orangeburg had conducted under the national banking laws a bank at Orangeburg, S. C., and as a part of its operation had conducted a trust department. On that date, Mrs. Carrie E. Wannamaker, now deceased, entered into a written trust agreement with said bank, and by virtue of said agreement

deposited the sum of $5,000.00 "to be held, managed, controlled, and invested through its trust department." The bank accepted said fund and administered the same until the closing of its doors, and paid to Mrs. Wannamaker from time to time various sums of money as interest payments on said fund.

On the 5th day of March, 1933, the Edisto National Bank of Orangeburg was closed by Presidential proclamation, and was later declared insolvent, and was never reopened. Later, the plaintiff, T. E. Marchant, was appointed receiver of said bank, and is now acting in said capacity.

During 1934, said receiver, being desirous of terminating the trust, and acting under the directions of the Comptroller of the Currency, prepared and submitted to Mrs. Wannamaker, who was then living, a full and complete accounting in respect to the trust involved; and said receiver took other necessary steps to terminate said trust; it seeming that the same was desired by Mrs. Wannamaker as well as by the receiver. On the 21st day of April, 1934, Mrs. Wannamaker actually signed a written approval of the action of the bank and of its receiver. It was evidently the intention at that time, both of the receiver and of Mrs. Wannamaker, that she should receive physical possession of the assets in which the bank had invested her trust fund of $5,000.00. Before these assets were actually turned over to Mrs. Wannamaker, she died; and the respondents qualified as executor and executrices, respectively, of her will, and refused to accept the funds and assets which the receiver had designated as being those in which Mrs. Wannamaker's money had been invested.

The receiver's report to Mrs. Wannamaker, and later to her representatives, was to the effect that he held as the investment of said trust fund $389.63 in cash; note and mortgage executed by J. L. Brailsford on certain real estate; and two "participation certificates," one amounting to $325.00 and the other to $3,250.00.

As to the "participation certificates," which play an important part in this litigation, it appears from the record that the bank, during its operation by its officers, kept separate, as is required by the federal law (12 U. S. C. A., § 248 (k), and also by the State law (Code 1932, § 7906), all of its trust funds segregated from its ordinary deposits; but the bank did not follow the provision of Section 7909 of the Code of Laws of South Carolina of 1932, and keep "the investments of each individual trust * * * separate and distinct from all other trusts," but that to the contrary it formed a "participation pool" and invested the funds of practically all parties for whom it became trustee in securities, which securities were taken to and held generally by the trust department of the bank, without any separation as between the various trust beneficiaries being attempted. These securities, it appears, according to a statement filed by the bank in one of the litigations hereinafter referred to, amounted to a face value of $186,773.88 against this "participation pool," the bank issued in favor of each trust beneficiary what were called "participation certificates." It further appears, however, that these participation certificates were kept by the bank and were not delivered to the beneficiaries.

The legality of this participation pool is one of the important issues arising in this matter. The question being whether or not the section of the South Carolina Code referred to governs a national bank, or whether or not the provisions of the federal law (12 U. S. C. A., § 248 (k)) by going thoroughly into the question of the handling of trust funds by national banks and by omitting the requirement that each trust fund must be kept separately, thereby gives to a national bank, acting as trustee, the right to proceed in such a manner as not necessarily to keep each trust fund separate from all others.

After the representatives of the estate of Mrs. Wannamaker refused to accept the assets which the receiver de-

sired to deliver to them as a full accounting of the dealings between Mrs. Wannamaker and the bank, the receiver on the 20th of June, 1934, brought the present action in the Court of Common Pleas of Orangeburg County. This action will hereinafter be adverted to as "the *Wannamaker case.*" In the complaint herein, the receiver sets out the facts above stated, including the fact that the assets, above referred to, were, in reality, those that Mrs. Wannamaker's estate were entitled to; that a full statement had been rendered to the representatives of Mrs. Wannamaker's estate; and that they had refused to receive the same, and that the same constituted a full and proper accounting; and the receiver prayed judgment "that the account as trustee be examined and approved; that the trust be terminated and the trustee discharged; and that the plaintiff as such receiver be authorized, with the final approval of the Comptroller of the Currency, to pay over any available cash, less fees and expenses, to the defendants as executor and executrices, respectively, and to assign to them without recourse or warranty whatsoever any and all securities, choses in actions, and participating certificates."

No answer was filed by the defendants in the *Wannamaker case* until the 29th day of October, 1934, the defendants, presumably, having been allowed by the plaintiff an extension of time within which to plead.

In the meantime, to wit, on or about the 20th day of September, 1934, the receiver brought in the District Court of the United States for the Eastern District of South Carolina an action against more than one hundred defendants, including amongst said number, W. J. Wannamaker, Carrie W. Dew, and Goldie W. Holman, as executor and executrices of the last will and testament of Mrs. Carrie Wannamaker, who were served with copies of said complaint in the United States Court, presumably before they had answered the action brought in the State Court. The action in

the United States Court is entitled *Marchant v. Barton,* and is hereinafter adverted to as "the *Barton case.*"

The complaint in the *Barton case,* brought, as has been stated, in the Federal Court, set out, in effect, the fact that each of the defendants, or those whom the defendants represented legally, had deposited in trust with the Edisto National Bank certain sums, which sums had been administered in the general manner hereinbefore referred to as to the Wannamaker fund; that the bank had failed, and that the receiver was desirous, under the directions of the Comptroller of the Currency, to rid himself of the trust, and to make full accounting for the action of the bank in the administration of its trust department; and the receiver prayed that the action of the bank, and of himself as receiver, should be fully examined and should be approved, and that a successor should be appointed as trustee for the fund in question, and that after said approval was given that he be permitted to turn over to his successor the whole of the fund, and to receive a full acquittance in so far as the trust department of said bank was concerned. The proceedings fully set out the investments that had been made, and the issuance, as in favor of each beneficiary, of such participation certificates as have been referred to.

After the bringing of the *Barton case* in the Federal Court, the defendants interposed an answer in the *Wannamaker case* in the State Court. In this answer the defendants set up for a first defense the contention, in substance, that they were not bound by any statement that had been submitted to Mrs. Wannamaker, she being an old lady, in feeble health, and unaccustomed to the transaction of business, and that said statement did not reveal to her any misconduct on the part of the bank. The answer further charged that it would be unjust and inequitable to force the Wannamaker estate to accept the assets proffered by the bank as in full of the $5,000.00 trust fund, for two reasons: (1) That the bank had invested the trust fund, or a part thereof,

"in securities owned by said bank"; and (2) that the plan of pooling assets and issuing participation certificates against the assets so pooled was illegal. The defendants further interposed a so-called counterclaim, setting out the same facts, and claiming that as a result thereof they were entitled to have judgment against the plaintiff for the sum of $5,000.00, the full amount of the trust fund, plus interest from the creation of the trust, less such payments as had been made.

These are the salient facts set out in the record. There are other facts which may be referred to hereinafter.

Various motions were then made and were heard before his Honor, Judge M. M. Mann. The more important of these motions and proceedings was a motion by the defendants for an injunction forbidding the receiver to proceed with the Barton action in the Federal Court, and a demurrer interposed by the receiver to the defendants' answer. Upon argument of these motions, Judge Mann enjoined the receiver from proceeding with the Barton action, holding, in effect, that the proceeding in the *Wannamaker case* was *in rem,* and that it drew into the State Court the whole of the pool against which the participation certificates had been issued, and that as said action antedated the Barton action in the Federal Court, that the State Court might alone proceed, and that any proceeding on the part of the Federal Court would tend to defeat or impair the jurisdiction of the State Court. Judge Mann further decided that the question involved as to the legality of the investing of the trust funds was peculiarly a class matter, and he ordered the defendants to amend their answer by alleging, in effect, that they were the representatives of a class and to proceed to represent the class of all beneficiaries under the trust fund. Judge Mann further overruled the plaintiff's demurrer to the defendants' answer.

This interesting appeal presents to the Court for immediate consideration and decision two main questions, namely,

(1) Was the injunction proper? and (2) Was the action of the Circuit Judge in overruling the demurrer proper? There are other incidental questions.

It is undoubtedly a fact that in matters arising out of the liquidation of a national bank that the federal statutes and decisions must be given full force, and are, generally, controlling, and that the matter of one Court protecting its jurisdiction by enjoining a litigant from proceeding in another Court is a delicate matter, but must be considered and handled with much nicety.

The general rule of law upon the question of the propriety of an injunction is stated by the Supreme Court of the United States in *Kline v. Burke Construction Company,* 260 U. S., 226, at page 229, 43 S. Ct., 79, 81, 67 L. Ed., 226, 24 A. L. R., 1077, as follows: "It is settled that where a Federal Court has first acquired jurisdiction of the subject-matter of a cause, it may enjoin the parties from proceeding in a State Court of concurrent jurisdiction where the effect of the action would be to defeat or impair the jurisdiction of the Federal Court. Where the action is *in rem* the effect is to draw to the Federal Court *the possession or control, actual or potential, of the res,* and the exercise by the State Court of jurisdiction over the same *res* necessarily impairs, and may defeat, the jurisdiction of the Federal Court already attached. The converse of the rule is equally true, that where the jurisdiction of the State Court has first attached, the Federal Court is precluded from exercising its jurisdiction over the same *res* to defeat or impair the State Court's jurisdiction." (Italics added.)

Again, the Supreme Court of the United States, in the case of *Farmers' Loan & Trust Company v. Lake St. Electric Railway Company,* 177 U. S., 51, 20 S. Ct., 564, 44 L. Ed., 667, further elucidated the rule as to what property is deemed to have passed under the control of a Court in which an action has been brought. The Supreme Court of the United States said: "The rule is not limited to cases where

property has actually been seized under judicial process before a second suit is instituted in another Court, but it applies as well where suits are brought to enforce liens against specific property to marshal assets, *administer trusts,* or liquidate insolvent estates, *and in all suits of a like nature. Farmers' Loan & Trust Co. v. Lake Street El. R. Co., supra; Merritt v. American Steel Barge Co.,* 24 C. C. A., 530, 79 F., 228, 49 U. S. App., 85." (Italics added.)

The concrete question presented to this Court for decision is the question of what was actually the *res* which came under the control of the State Court by virtue of the bringing of the *Wannamaker case.* The appellant claims that it was only the Brailsford mortgage, the two participation certificates, and the cash tendered to Mrs. Wannamaker and her representatives. It is, however, a fact that the receiver in his complaint specifically asked that the Court examine and approve the handling by the bank and by himself of the trust fund left with the bank by Mrs. Wannamaker; and in the exhibits attached to the complaint, set out that the fund had been invested in the Brailsford mortgage, and also in the participation certificates. This much appears in the complaint without any reference to the answer. The answer, interposed after the Barton action had been brought, merely amplifies the facts which must have been apparent to the Court from the complaint itself.

Then the situation is that in order to determine whether or not the actings and doings of the bank and of its receiver as to the handling of the Wannamaker fund was proper, so that upon examination it could be approved, and so that the representatives of Mrs. Wannamaker could be forced, to accept the Brailsford mortgage, and the participation certificates, that the Court should fully examine into the whole of the participation pool, and all of the investments held in the pool, and of the whole proceedings of the bank thereabout. It is true that Mrs. Wannamaker's share in said pool is but a small portion of the same, but the determination of the

validity of the investments made for Mrs. Wannamaker by her trustee, in our opinion, places before the State Court the necessity of a full and searching inquiry into the whole of the fund represented by the participation certificates.

From this finding, it automatically follows under the ■ decision of the United States Supreme Court, hereinbefore referred to, that it was proper for the Circuit Judge to enjoin the receiver from proceeding in the Federal Court with the *Barton case* in all ways and all matters that would be to the prejudice of the Wannamaker estate, but not otherwise. It is believed that the Federal Court will agree thoroughly with the conclusion reached.

An incidental question that arises at this point is the ■ disposal of the exceptions to the order of the Circuit Judge ordering the defendants to amend their answer, by alleging that they defend as representatives of the general class made up of all of the beneficiaries of the participation pool. We are of the opinion that the Court ought to have extended permission to the respondents so to act rather than to have ordered them to do so.

The second vital question is whether the demurrer to the defendants' answer was properly overruled.

Appellant relies upon the decision of the Supreme Court of the United States in *Lantry v. Wallace,* 182 U. S., 536, 21 S. Ct., 878, 885, 45 L. Ed., 1218, and quotes from it to the effect that no judgment can be granted against a receiver for misfeasance, malfeasance, etc., or an officer of the bank, and specifically quotes then the opinion of the Court to the effect that: "We perceive no ground whatever upon which the defendant can have a judgment upon his cross petition or counterclaim against the receiver. That officer had nothing to do with the fraudulent transactions of the bank prior to its suspension."

A perusal of the Lantry decision, however, shows that the action was one on stockholders' liability, with the defense interposed that the officers of the bank had, while it was a

running organization, fraudulently induced the defendant to purchase said stock while the bank was hopelessly insolvent. The Court held that the action was the familiar one for the benefit of depositors, and that the alleged malfeasance of the officers and their alleged fraudulent misrepresentation constituted no defense to a stockholders' liability case; and the general language as to a counterclaim not lying against the receiver was applicable only to the facts of that particular case.

The Lantry decision is certainly not authority for a contention that no relief whatsoever may be granted to the beneficiary of a trust who alleges and proves an unlawful handling of his funds; the remedy in such case is against the estate of the bank held by the receiver.

The instant case presents a different question from most of the cases cited by counsel. In the case of *Edisto National Bank of Orangeburg v. Bryant* (C. C. A.), 72 F. (2d), 917, which was frequently referred to in argument, largely because it involves the same institution, there was a failure to transfer a deposit to the trust branch of the bank for investment, although this same bank had bound itself so to do. It was held by the Circuit Court of Appeals of the Fourth Circuit that there was no traceable *res* and no augmentation of the funds that passed to the receiver, and hence that plaintiff could claim no preference in the distribution of the bank's assets. The same general doctrine governed the case of *Schumacher v. Harriett* (C. C. A.), 52 F. (2d), 817, 818, 82 A. L. R., 1, and the *Michie case,* 167 S. C., 1, 165 S. E., 359, and the *Hernlen case,* 156 S. C., 181, 153 S. E., 133, 69 A. L. R., 443, and in part the *Bank of Aynor case,* 144 S. C., 147, 142 S. E., 239, but in the present case the complaint and the answer alike specifically allege that there has been an investment of the funds in specific property, namely, the Brailsford mortgage, and the shares in the investment pool, with a small amount retained in cash. The facts in this case are more nearly analogous to those in the

case of *Leaphart v. National Surety Company,* 167 S. C., 327, 336, 166 S. E., 415.

We agree with Judge Mann in the main, so far as the *Wannamaker case* is concerned, and his orders ought to be affirmed, as written, except as herein indicated and modified.

The State Court has jurisdiction of all parties before it by consent. The plaintiff voluntarily went into the State Court, which first acquired jurisdiction, and thus carried the subject-matter and all that pertained to it into the State Court. No party can go into a Court with reservations. When he goes into Court, he must go in all the way, so far as the case set out in his complaint is concerned, and when once in, he cannot turn about face and invoke a Court of co-ordinate jurisdiction to help him out. Also, he cannot do indirectly what the law will not allow him to do directly. In fact, we could not conceive of a case in which the jurisdiction of the State Court is, or could be, clearer. It is also clear that the Court had full jurisdiction, as the plaintiff went in unreservedly and asked for general relief. No action in or by the Federal Court could oust the jurisdiction of the State Court as to the case and its subject-matter, and any gesture in that direction was simply futile.

Judge Mann was correct in keeping the *Wannamaker case,* as set out in the complaint, and all its ramifications in the State Court, where plaintiff had put it. The State Court had at least concurrent jurisdiction of the case and its subject-matter, and plaintiff will not at this time be heard to make any question as to this. Parties cannot take inconsistent positions in a Court of justice. The State Court has full power and authority to determine the *Wannamaker case,* without let or hindrance from the Federal Court. 24 A. L. R., 1084, note.

The status of the Wannamaker matter must not be changed or any of the assets, choses in action, or things in the hands, or under the control, of plaintiff shifted or disposed of, or affected in any way, so as to impede, hinder, or

delay the State Court in the disposition of the instant case. The State Court having first gotten jurisdiction of the sub-·ject-matter, the Federal Court can do nothing relative to the case that will in any way prejudice the matter in the State Courts. We open our doors to national banks—they can come into our Courts, and when they do, they must fare like other litigants; they may not step in and out at their pleasure.

The order of Judge Mann, so far as it affects the Wannamaker claims and case, is correct, and must be affirmed, but so far as it goes outside of the subject-matter of the *Wannamaker case*, must be reversed. That part of the order applying to, and bringing in, their parties must be reversed.

That part of the order allowing amendments to the answer is reversed, and also that part of the order enjoining other parties from proceeding in the Federal Courts is reversed, except in so far as it applies to the *Wannamaker case*.

In the order dated November 13, 1934, Judge Mann was in error in not striking out the counterclaim set up in the answer. *Lantry v. Wallace,* 182 U. S., 536, 21 S. Ct., 878, 45 L. Ed., 1218; *Winn v. Harby,* 171 S. C., 301, 172 S. E., 135; Title 12, § 194, U. S. C. A., Note 32; *Davis v. Elmira Sav. Bank,* 161 U. S., 275, 16 S. Ct., 502, 40 L. Ed., 700; *Cook County Nat. Bank v. United States,* 107 U. S., 445, 2 S. Ct., 561, 27 L. Ed., 537.

However, Judge Mann was correct in refusing to strike out any other part of the answer, and was also correct in overruling all other motions, except the ones allowing an amendment and extension of time, which are reversed.

The plaintiff and defendants are in the forum of their own choosing. The plaintiff brought the case in the State Court and the defendants had an opportunity to go into the Federal Courts; and as no third party is before the Court

complaining, we may well leave the parties where we find them.

We proceed to make clear what is held in this case:

1. The *Wannamaker case* with all its ramifications and all assets, rights, credits, and things in the hands of, or under the control or possession of, plaintiff is fixed in the State Court, so far as it affects the *Wannamaker case,* but all matters and things not necessary or proper to a full determination of the said estate of Wannamaker are released.

2. Plaintiff, by bringing the suit here, has invoked the jurisdiction of the State Court, and is bound by his own act, and can do nothing to impede or hinder the State Court in disposing of the case at bar.

3. All the pleadings are left intact, except the counterclaim, which is stricken out as a counterclaim, but is left in as a defense.

4. The order allowing amendment, extension of time, and enjoining third parties, and enjoining parties from proceeding in the Federal Court, and requiring them to come into the State Courts, except as to the Wannamaker matter, are reversed and set aside.

Upon consideration and upon reason, we feel and hold that if there has been an illegal investment, the defendants are entitled to ascertain in this proceeding, by such means as the Circuit Court may properly adopt, what the assets in which the trust funds were invested are worth; and if a loss was occasioned by the action of the bank, to prove the deficit against the assets of the bank, whether as a mere open account creditor or as a preferred creditor to be determined.

Hence, upon considering the demurrer, the vital question is whether any illegal handling of the fund has been alleged. The answer alleges that the bank invested "the said fund or a part thereof in securities owned by the said bank." All Courts, both State and Federal, agree that a trustee may not invest trust funds in its own assets.

*Anderson v. Butler,* 31 S. C., 183, 9 S. E., 797, 5 L. R. A., 166; *Leaphart v. National Surety Company,* 167 S. C., 327, 166 S. E., 415; *Duncan v. City of Charleston,* 60 S. C., 532, 39 S. E., 265; *United States v. Carter,* 217 U. S., 286, 30 S. Ct., 515, 54 L. Ed., 769, 19 Ann. Cas., 594; *Michoud v. Girod,* 4 How., 530, 11 L. Ed., 1076; *McCallum v. Grier,* 86 S. C., 162, 68 S. E., 466, 138 Am. St. Rep., 1037; *Scottish American Mortgage Company v. Clowney,* 70 S. C., 229, 49 S. E., 569, 3 Ann. Cas., 437; *Sumter Trust Company v. Moses,* 116 S. C., 446, 107 S. E., 918. This allegation alone is sufficient to sustain the Circuit Judge's order overruling the demurrer, except as herein indicated, and to remand the cause for further procedure in the Court of Common Pleas of Orangeburg County.

In its trial of the case, amongst other issues, the Circuit Judge will inquire:

1. Into the legality of the investment pool maintained by the Edisto National Bank of Orangeburg, considering whether Section 7909 of the South Carolina Code of 1932, governs a national bank, or whether the provisions of 12 U. S. C. A., § 248 (k), and other laws and regulations rendered said pool legal. Counsel will likely wish to consider and to argue this important issue in this case much more fully than in their present presentation to this Court.

2. Into the question of whether, should it be decided that any of the investments were illegal and that a deficit has arisen in the trust fund, the defendants may, under the law governing the liquidation of a national bank, have a preference, or may only prove the claim for their deficit as general creditors. See *Davis v. Elmira Sav. Bank,* 161 U. S., 275-288, 16 S. Ct., 502, 40 L. Ed., 700; *Cook County Nat. Bank v. United States,* 107 U. S., 445, 2 S. Ct., 561, 27 L. Ed., 537, 12 U. S. C. A., § 194; and *Ex parte Bank of Aynor,* 144 S. C., 147, 142 S. E., 239, and numerous other decisions. This inquiry is expressly left open as to the facts elicited at the trial may govern the law involved.

Of course, if other defendants, or other parties in interest, come into this case, which is hereby permitted, their rights are to be ascertained in the same general manner.

It is the judgment of this Court that all exceptions are overruled, except as herein sustained, and the rulings below are affirmed, except as modified, and the cause is remanded to the Circuit Court of Orangeburg County for trial along the lines indicated herein, and for such other proceeding as may be proper.

MR. CHIEF JUSTICE STABLER, MESSRS. JUSTICES CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE E. C. DENNIS concur.