WANNAMAKER et al. v. EAVES et al.

No. 3863.

Circuit Court of Appeals, Fourth Circuit.

Oct. 8, 1935.

COWPENS MANUFACTURING COMPANY, Appellant, v. UNITED STATES of America, Appellee.

COWPENS MILLS, Appellant, v. UNITED STATES of America, Appellee.

Nos. 3686, 3687.

Circuit Court of Appeals, Fourth Circuit.

Oct. 8, 1935.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

James A. Moss, of Orangeburg, S. C. (Adam H. Moss, of Orangeburg, S. C., on the brief), for appellants.

W. C. Wolfe, of Orangeburg, S. C. (H. J. Riley, of Bennettsville, S. C., on the brief), for appellees.

Before PARKER and SOPER, Circuit Judges, and CHESNUT, District Judge.

PARKER, Circuit Judge.

This is an appeal from an order granting an interlocutory injunction in a suit instituted in the court below by Mrs. Eva R. Eaves against the executors of the will of Mrs. Carrie E. Wannamaker and T. E. Marchant, receiver of the Edisto National Bank of Orangeburg, S. C. This suit, which we shall refer to hereafter as the "Eaves" suit, was in effect ancillary to a suit then pending in the same court wherein Marchant, receiver of the Edisto National Bank, was plaintiff, and W. S. Barton, Jr., and approximately one hundred other persons, including Mrs. Eaves, were defendants. The suit last mentioned, which we shall refer to hereafter as the "Barton" suit, was instituted for the purpose of securing the proper distribution of trust funds held by the bank in a participating pool or trust. The Eaves suit was instituted to protect the jurisdiction of the court in winding up in the Barton suit the participating trust to which we have referred and to prevent interference with the receiver in the discharge of his duties in winding up the affairs of the bank under the applicable federal statutes and the direction of the Comptroller of the Currency. The executors of Mrs. Wannamaker, against whom the interlocutory injunction was granted in this Eaves suit, were defendants in a suit instituted by the receiver in a state court to settle a trust account in a matter in which the failed bank had been acting as trustee for Mrs. Wannamaker; and they were attempting in that suit, which we shall call the "Wannamaker" suit, to restrain the receiver of the bank from prosecuting the Barton suit. The facts out of which this rather complicated jurisdictional tangle has arisen are as follows:

A receiver was appointed for the Edisto National Bank on January 23, 1934. Prior to that time it had been operating a trust department and had conducted therein a participating pool or trust. Trust funds belonging to different persons and estates were combined in this pool for purposes of investment, and participation certificates were issued to those whose funds were thus combined, showing the amount invested in behalf of each and the right of the holders to participate in the funds and assets of the pool. At the time of the appointment of the receiver, the total of these participation certificates was $186,773.88; and the bank held in trust, as belonging to the investment pool, cash in the sum of $28,156.33, notes of the city of Orangeburg, S. C., in the sum of $62,500, and notes secured by mortgages on real estate for the remainder of the $186,773.88. On September 20, 1934, the receiver of the bank, at the direction of the Comptroller of the Currency, instituted the Barton suit in the court below against W. S. Barton, Jr., and others, as holders of the participation certificates, asking the court to appoint a trustee to take charge of all of the moneys and property belonging to the participating trust, to liquidate that trust for the benefit of the certificate holders, and to distribute among them the funds belonging to the trust in accordance with their rights.

Some time prior to the institution of this Barton suit, the receiver had instituted in a state court the Wannamaker suit against the executors of Mrs. Wannamaker, to secure the settlement of a trust

which the bank had been administering in her behalf. The complaint in that case set forth the insolvency of the bank, and asked that the account tendered by the receiver be approved and that he be authorized to pay over and deliver to the executors of Mrs. Wannamaker, in final settlement of the liability of the bank as trustee, cash to the amount of $389.63, note of one Brailsford secured by mortgage on real estate for $1,000, and two certificates of interest in the participating trust to which we have referred of the aggregate face value of $3,575. No answer was filed in this suit until more than a month after the institution of the Barton suit. Then the executors of Mrs. Wannamaker filed an answer in which they alleged that the bank, instead of properly investing the funds which it held in trust for Mrs. Wannamaker, had wrongfully converted them to its own use by investing them in securities which it owned, by combining them with other funds for joint investment, and by investing them in certificates issued against securities of the bank which had been pooled for the purpose of issuing such securities. By way of counterclaim, the answer demanded judgment against the bank for $5,000, the full amount of the Wannamaker trust fund.

On November 3, 1934, the executors of Mrs. Wannamaker applied for and obtained in the Wannamaker case an order which forbade the prosecution of the Barton suit and attempted to assume complete control of the entire participating trust over which the federal court had acquired jurisdiction in that case. That order provided:

"It is ordered, that T. E. Marchant, as Receiver of the Edisto National Bank of Orangeburg, S. C., be, and hereby is, enjoined from prosecuting that certain action now pending in the United States District Court for the Eastern District of South Carolina, entitled T. E. Marchant, as Receiver of the Edisto National Bank of Orangeburg, Complainant, against W. S. Barton, Jr., et al., Defendants or from instituting any proceedings in any court relative to the subject matter described in the complaint in the aforesaid action until the jurisdiction of this court has been exhausted.

"It is further ordered, that the said T. E. Marchant, as Receiver, as aforesaid, be, and hereby is, required to settle all of the matters and things set forth in the said suit against W. S. Barton, Jr., et al., in the above entitled action."

That order, in so far as it attempts to go beyond the matters properly involved in the Wannamaker suit, has been reversed by the Supreme Court of South Carolina. See Marchant v. Wannamaker et al., 176 S. C. 369, 180 S. E. 350. But Mrs. Eaves, who was interested as a creditor of the bank as well as the holder of a participation certificate, and who was a party to the Barton suit, without awaiting the outcome of the appeal in the Wannamaker suit, instituted the Eaves suit for the purpose of protecting the rights of the parties and the jurisdiction of the court in the Barton suit, and also for the purpose of protecting the right of the creditors of the bank to have it liquidated under the federal law applicable without interference from the state court. The judge below granted the interlocutory injunction as prayed, on the ground that the federal court had first acquired jurisdiction in rem as to the property involved in the Barton suit, and that the state court was without power to make any order with reference thereto.

The order from which appeal is taken grants a "preliminary injunction as prayed" without setting forth in detail the scope of the injunction as granted; but in so far as it was intended to restrain any interférence with the exercise of the jurisdiction of the court acquired in the Barton case (which was its real purpose and the matter which was discussed below and which has been argued before us), it was unquestionably proper and should be affirmed. We agree with the Supreme Court of South Carolina that the jurisdiction in rem acquired by the state court upon the filing of the Wannamaker suit gave that court exclusive jurisdiction over the res there involved; but on like principle the jurisdiction in rem acquired by the federal court upon the filing of the Barton suit gave that court exclusive jurisdiction as to the res there in controversy. Penn General Casualty Co. v. Com. of Pa., 294 U. S. 189, 55 S. Ct. 386, 389, 390, 79 L. Ed. 850; Harkin v. Brundage, 276 U. S. 36, 43, 48 S. Ct. 268, 72 L. Ed. 457; Kline v. Burke Construction Co., 260 U. S. 226, 43 S. Ct. 79, 67 L. Ed. 226, 24 A. L. R. 1077; Farmers' Loan & Trust Co. v. Lake Street Elevated R. Co., 177 U. S. 51, 61, 20 S. Ct. 564, 568, 44 L. Ed. 667. As said by the Supreme Court in the case last

cited: "The possession of the res vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and for the time being disables other courts of co-ordinate jurisdiction from exercising a like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons. Nor is this rule restricted in its application to cases where property has been actually seized under judicial process before a second suit is instituted in another court, but it often applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in suits of a similar nature where, in the progress of the litigation, the court may be compelled to assume the possession and control of the property to be affected. The rule has been declared to be of especial importance in its application to federal and state courts. Peck v. Jenness, 7 How. 612, 12 L. Ed. 841; Freeman v. Howe, 24 How. 450, 16 L. Ed. 749; Moran v. Sturges, 154 U. S. 256 [14 S. Ct. 1019], 38 L. Ed. 981; Central Nat. Bank v. Stevens, 169 U. S. 432, 18 S. Ct. 403, 42 L. Ed. 807; Harkrader v. Wadley, 172 U. S. 148, 19 S. Ct. 119, 43 L. Ed. 399."

The res of which the state court acquired jurisdiction in the Wannamaker suit was the property which was brought under the actual or constructive possession of that court for administration as a result of the filing of the suit. That property was cash in the sum of $389.63, the Brailsford note, secured by real estate mortgage, for $1,000, and two participation certificates in the sum of $3,575. The state court undoubtedly acquired jurisdiction also to pass upon the account presented by the receiver and to award judgment against him, as receiver, for any conversion of trust property by the bank; but such judgment would be one in personam and not in rem, and the mere power to render judgment of this character could not be said, by any possibility, to bring into the actual or constructive possession of the court either the general assets of the bank of which the receiver had possession or the assets which were held in trust for the holders of the participation certificates. The res of which the federal court acquired jurisdiction in the Barton suit, on the other hand, consisted of the cash, bonds, and notes which

the bill of complaint in that suit described and which it asked the federal court to administer for the benefit of the holders of participation certificates in accordance with their rights.

The federal court was without power in the Barton suit to make any order affecting the cash, the note and mortgage, or the ownership of the participation certificates brought under the control of the state court in the Wannamaker suit; and the state court was without power in the Wannamaker suit to make any order affecting the cash, bonds and mortgages brought under the control of the federal court in the Barton suit. The difficulty arising out of the fact that the participation certificates of Mrs. Wannamaker aggregating $3,575 were involved in both suits is more apparent than real. In the Wannamaker suit the question with respect to these certificates was essentially one of investment and ownership, i. e. whether the funds of Mrs. Wannamaker's trust had been rightfully invested in them so that they belonged to the trust and might be surrendered by the receiver in discharge of liability. In the Barton suit, no question of the propriety of investment in or ownership of these certificates was involved. They were of importance in that suit only because the person owning them was entitled to share in the distribution of the assets in the hands of the court; and there was no reason why the determination of the question as to the ownership of and investment in these certificates should interfere in any way with the administration of the assets of the participating trust, or vice versa.

Both the Barton and the Wannamaker suits might go forward, therefore, without in any way interfering with each other. In the Wannamaker suit the account of the receiver would be audited, the trust would be closed, the propriety of the investment of funds belonging to the trust would be determined, and judgment would be entered against the receiver for any conversion of trust funds by the bank that might be shown. The liability of assets in the hands of the receiver to a lien on account of any judgment that might be awarded in such suit would, of course, be governed by federal law; but the courts of the state would have regard to the federal law in formulating their judgment and would be subject to review in this particular by the Supreme Court of the United

States. In the Barton suit, the court would proceed to liquidate the trust and make distribution to the holders of participation certificates; and, in the case of the two certificates involved in the Wannamaker suit, it would make distribution to such person as the state court might adjudge entitled to the certificates. There would be no more difficulty in doing this than in proceeding with a corporate receivership where there is a controversy with respect to the ownership of bonds which the corporation has issued and a suit is pending between conflicting claimants with regard thereto.

Under these circumstances, we think that the learned judge below was unquestionably right in granting an interlocutory injunction at the instance of one of the parties to the Barton suit to restrain the executors of Mrs. Wannamaker from undertaking proceedings in the Wannamaker suit which would interfere with the exercise of the court's jurisdiction in the Barton suit. As the Barton suit was in rem, the court below had acquired exclusive jurisdiction to deal with the property in its possession and to make all necessary orders for the conservation, liquidation, and distribution thereof, and was charged with the duty of staying all proceedings which would interfere with the proper exercise of that jurisdiction. Section 265 of the Judicial Code, 28 USCA § 379, does not forbid this; for the inhibition of that statute has no application to injunctions necessary to protect a jurisdiction previously acquired by the federal court. Julian v. Central Trust Co., 193 U. S. 93, 112, 24 S. Ct. 399, 48 L. Ed. 629; Dietzsch v. Huidekoper, 103 U. S. 494, 497, 26 L. Ed. 497; French, Trustee v. Hay, 22 Wall. 250, 253, 22 L. Ed. 857; Brown v. Pacific Mutual Life Ins. Co. (C. C. A. 4th) 62 F.(2d) 711, 714; Mississippi Valley Trust Co. v. Franz (C. C. A. 8th) 51 F.(2d) 1047, 1049; Garner v. Second Nat. Bank (C. C. A. 1st) 67 F. 833; Sharon v. Terry (C. C.) 36 F. 337, 356, 1 L. R. A. 572, et seq. (per Mr. Justice Field).

██ And the point that the judgment of the state court in the Wannamaker suit was binding on the judge below on the principle of res adjudicata is without merit. In the first place, there was identity neither of issues nor of parties in the two suits. The issues in the Wannamaker suit were the correctness of the account filed for the purpose of closing the trust there involved and the propriety of the investment of the funds in the mortgage and certificates which the receiver sought to deliver to the executors. In the Eaves suit the issue was the right of the court to proceed without interference in the Barton suit with the liquidation of the participating trust. As to identity of parties, it appears that neither Mrs. Eaves nor any other holder of a participation certificate was a party to the Wannamaker suit. In the second place, the state court was without jurisdiction to make any order in the Wannamaker suit interfering with the exercise by the federal court of its exclusive jurisdiction previously acquired in the Barton suit; and any action taken by the state court was, therefore, void and was not binding on the federal court on the principle of res adjudicata or upon any other ground. And this is true even though parties to the proceeding in the federal court may have appeared and contested the action taken by the state court. Irving Trust Co. v. Fleming (C. C. A. 4th) 73 F. (2d) 423, 427 et seq. The jurisdiction in rem acquired by the federal court in the Barton suit was exclusive with respect to dealing with the property in its possession, just as is the jurisdiction of a court of bankruptcy with respect to property in its possession, a situation with which we dealt in Irving Trust Co. v. Fleming, supra, and what we said in that case is applicable here. We said: "As the jurisdiction of the bankruptcy court over the property was exclusive, the state court could have acquired no jurisdiction to deal with it because of the action of the trustee in filing the petition. A proper respect for the state court required that the trustee make application to it for the return of the property, just as it is proper to ask a state court for an order of removal in a case where a proper petition and bond for removal have been filed in a case properly removable into the federal court (see Williams v. N. Y., P. & N. R. Co. (C. C. A. 4th) 11 F.(2d) 363, 367, 45 A. L. R. 437), but a refusal of the state court to take the proper action no more divests the jurisdiction of the federal court in the one case than in the other."

██ We assume that in granting the injunction "as prayed" it was not intended that proceedings in the Wannamaker suit be enjoined except in so far as they would

558

interfere with the proceedings in the Barton suit. Certainly the injunctive process of the federal court cannot be invoked to protect a receiver of a national bank against proceedings in a state court except in protection of a jurisdiction in the federal court previously acquired. Ordinarily, if a receiver of a national bank is sued in a state court and desires to have the question involved in such suit tried in the federal court, his remedy is by removal under the applicable statutes, not by injunction.

The order of the court below will be modified so as to restrain the defendants from applying for or pursuing any remedies in the Wannamaker suit which will interfere in any way with the jurisdiction of the court below in the Barton suit to hold, liquidate, and distribute the assets brought under its jurisdiction in that suit; but this injunctive order shall in no wise interfere with the state court in passing upon the issues properly involved in the Wannamaker suit. Distribution shall be made by the court below with respect to the participation certificates involved in the Wannamaker suit to the person or persons adjudged by the state court to be entitled to such certificates; and the receiver of the bank shall be required to retain in his hands until the disposition of the Wannamaker suit by the state court sufficient funds to satisfy any judgment which may be rendered by that court in favor of the executors of Mrs. Wannamaker.

The controversy which has arisen would seem to be of little practical importance to the parties, as it appears from statements and admissions at the bar of the court that the participation certificates will be paid practically in full at their face value. The case is of importance, however, because of the conflict of jurisdiction which has arisen. Happily, the action of the Supreme Court of South Carolina in modifying the decree of the circuit court of that state, so as to limit the action of that court to a determination of the issues properly involved in the Wannamaker suit, has removed to a large extent the conflict of jurisdiction. When the order of the court below is modified as here indicated, any possibility of conflict will, we think, be entirely removed.

The interlocutory order appealed from will be modified as herein indicated, and as so modified it will be affirmed.

Modified and affirmed.