CITY OF ORANGEBURG v. SOUTHERN RY. CO.

SOUTHERN RY. CO. v. CITY OF ORANGEBURG et al.

No. 454.

District Court, E. D. South Carolina, Orangeburg Division.

June 25, 1942.

Hugo S. Sims, of Orangeburg, S. C., for plaintiff.

Frank G. Tompkins, of Columbia, S. C., and Adam H. Moss, of Orangeburg, S. C., for defendant.

WARING, District Judge.

The above entitled cause was commenced by the service of a summons and complaint on December 14, 1940. The case was instituted in the Court of Common Pleas for Orangeburg County, South Carolina. The plaintiff is a municipal corporation and the complaint was for the purpose of foreclosing an alleged lien on certain lands located within the City of Orangeburg, the lien being claimed because of an assessment levied for improvements in streets abutting on the said property. The complaint alleged that the defendant was the owner of land described in the said complaint and showed that under authority of Article X, Section 16 of the Constitution of the State of South Carolina, cities of Florence and Orangeburg and the Town of Landrum may assess abutting property for permanent improvements, and an Act of the General Assembly of the State of South Carolina (Act No. 345, Acts of 1915, page 586), the City of Orangeburg adopted certain ordinances relative to street improvements and as a result thereof levied an assessment upon certain abutting property including that involved in this suit. The

complaint alleged that all provisions of law had been duly complied with and that the assessment amounting to the sum of $6,937.01, together with interest from January 15, 1937, at the rate of 6% per annum was due. The complaint prayed that the lien upon the lot be foreclosed; that the premises be sold and the proceeds of sale, after the payment of costs and any taxes that might be due, be applied upon the payment of the assessment.

The defendant, the Southern Railway Company, answered, reserving the right to institute removal proceedings and in due time, namely: January 2, 1941, filed its petition and bond and took other appropriate steps whereby the said cause was removed to the jurisdiction of this court.

Apparently on January 14, 1941, the plaintiff by and through one of its officers, namely: F. M. DeMars, as Tax Collector of said municipality, attempted to levy an execution on the lands for the purpose of summarily foreclosing the same lien which had been claimed in the suit heretofore instituted. On the same date the plaintiff instituted a second action in the Court of Common Pleas for Orangeburg County, making substantially the same allegations as in the first suit, the defendants therein named being the Southern Railway, Carolina Division, the South Carolina and Georgia Railroad Company, the South Carolina Railroad Company and the South Carolina Railway Company, which are alleged to be South Carolina corporations. F. M. DeMars as Tax Collector in the levy made under summary process hereinabove referred to, gave notice that this real estate was "being seized as the property of the Southern Railway; Southern Railway, Carolina Division; South Carolina & Georgia Railroad Company; South Carolina Railway Company and all other persons or person who may have or claim any interest in and to the same". Apparently the City officials were doubtful as to the real owner of the property, but it is quite clear that it was the same property and that it was the same lien claimed against this property, which was sought to be enforced in both of these two suits and also in the attempt at summary action.

Thereafter the Southern Railway Company filed its petition in this cause setting forth substantially the above recited facts and showing that the Southern Railway, Carolina Division, was a corporation formed out of a merger of the South Carolina & Georgia Railroad Company and the South Carolina Railroad Company and the South Carolina Railway Company, which three last named companies are now out of existence. The petition prayed that this court should issue its rule against the City of Orangeburg and F. M. DeMars, citing them to appear in this court and show why they should not be adjudged in contempt and also that they should be required to show cause why they should not be restrained from proceeding in the State Court or in any other cause other than this pending action. This petition with the exhibits was filed on April 8, 1941, and Judge A. M. Lumpkin, then presiding in this court, issued an order requiring that the parties show cause why they should not be adjudged in contempt and enjoined as prayed for in the petition. The matter was never heard by Judge Lumpkin before his untimely death and so it later came on for a hearing before me at the recent term of court holden in Orangeburg, S. C.

A return was filed on behalf of the City of Orangeburg and F. M. DeMars, wherein they made assurances that they had not in any way intentionally proceeded in disregard of the jurisdiction of this court and they stated that if this court should find that their acts did in any way constitute, or were tinged with, contempt they would make such proper apologies and amends as might be deemed just and appropriate. In regard to the other matters, namely: the prayers for injunction, the respondents admitted that they had attempted to foreclose the lien, which the City of Orangeburg claimed by reason of a paving assessment by the institution of this suit and further alleged that they had later discovered that the Southern Railway was not the real owner of the property and that its only interest in the property was derived from a lease for a term of years. They stated that they deemed it proper to institute another suit against the parties whom they now believed to be the true owners and that because of their uncertainty of the rights and relations between the defendants named in their second suit and in order to protect themselves from the extinguishment of the lien by lapse of time the Tax Collector, F. M. DeMars, had been instructed to and did levy upon the real estate. It was further stated that while the levy had actually been made on January 14, 1941, no further steps had

been taken to enforce this and the sole purpose of the levy was to protect the lien from expiring by operation of the time limit of the statutes. The respondents denied that this court had acquired jurisdiction over the real property and further alleged that an action for foreclosing any lien against specific real estate is an action in rem and that the Court of Common Pleas for Orangeburg County has acquired the exclusive jurisdiction over the said real estate because of the ownership alleged in the second suit. The return further says on information and belief, that the Southern Railway and the Southern Railway, Carolina Division, are corporations directed and controlled by the same executives and under identical ownership, management and control and that the subsidiary corporation the Southern Railway, Carolina Division, has admitted that it owns an easement for railroad purposes over the lands described in the Complaint and that such lands are occupied by the Southern Railway under a lease for a term of years. The respondents, therefore, pray the dismissal of the rule and that no injunction issue and that the proceedings in the State Court be allowed to go forward and that no further steps be taken in the cause in this court.

In the presentation of the matter before me it was admitted that the actual ownership of the land in question was in some doubt, but that apparently the various companies had an easement or right to use the said lands for railroad purposes and that a lease had been entered into between Southern Railway, Carolina Division, and the Southern Railway Company dated June 30, 1902, which recites an Act of the General Assembly of South Carolina of February 19, 1902, authorizing the consolidation and merger of the various railroad companies and that all of their properties and franchises were leased to the Southern Railway Company. This lease apparently includes the property in question and grants to the Southern Railway Company "lines of railroad property and franchises and their appurtenances * * * for the full term of Nine Hundred and Ninety Nine (999) years beginning on the 1st day of July in the year One Thousand Nine Hundred and Two (1902)."

From the foregoing it will appear that there seems to be grave doubt as to who is the actual owner of the fee to the land in question. In the argument it was generally admitted that it was uncertain whether the fee in these lands was ever acquired by any one or more of the railroad companies hereinabove named or any of their predecessors, but that they did hold rights for the use thereof for railroad purposes and the lands had been devoted to such use. The lands are at present in the actual possession and control of the Southern Railway Company under this long term lease and it is using and exercising all of the rights and franchises acquired under its lease and held by its predecessors in and to this land.

■ Under the provisions of the Constitution of South Carolina and appropriate acts of the General Assembly and ordinances of the City of Orangeburg the city proceeded to make certain improvements to streets on which the property in question abutted and assessments were duly made against the various abutting properties. It appears that the railway company disputed the right of the city to make an assessment against it and some time ago put the city on notice that it would not recognize the assessment as a valid lien. Accordingly the various steps hereinabove recited were taken by the city for the purpose of enforcing its alleged lien. The various questions as to the validity of the assessment or the lien, which may involve the merits of the controversy, have not been argued or presented to me. These must be determined when the case comes on for a trial and will be determined in the instant case if the contention of the Southern Railway Company is correct that this court has acquired and should hold jurisdiction.

■ Under the Constitution of the State of South Carolina adopted in 1895, municipalities did not have the power to levy assessments against abutting property for street improvements. Subsequently, however, there were a number of amendments to the Constitution giving particular cities such power. In 1915 (29 St. at Large, p. 88), an amendment was ratified giving the Cities of Florence and Orangeburg and the Town of Landrum such power and in the same year the General Assembly passed an act in substantially the same terms as the constitutional amendment, by which the City of Orangeburg was empowered to levy such assessments as were made in the instant case. In a later year, namely: 1919, 31 St. at Large,

p. 38,. there was another constitutional amendment ratified which authorized incorporated cities and towns throughout the State to take similar action. This is known as Section 17 of Article X of the Constitution. The two amendments are practically the same except that the one applicable especially to Orangeburg provides for the consent of a majority of the owners of the properties abutting and the payment by such owners of two-thirds of the cost, while the general amendment provides that the consent of two-thirds of the owners must be obtained and they pay at least one-half of the cost. In other respects, however, the two amendments are substantially the same. They are written in almost the same verbiage and there is really no difference whatsoever in them except the details above mentioned, which are not in issue in this case. The General Assembly in 1915 adopted an act now known as Section 7374 of the Code, following substantially the language of Section 17, Article X of the Constitution and empowering cities and towns to provide by ordinances for the payment of improvements on streets and to make assessments for the payment thereof. In 1919 the General Assembly adopted an act now known as Section 7376, providing that assessments for street improvements should constitute a lien upon the property so assessed and providing that payment "may be enforced as the payment of city or town taxes is enforced". From the foregoing it will be seen that under the general law the cities and towns were given the right to enforce the collection of street improvement assessments by summary process similar to that used in the collection of taxes. The constitutional amendment and act relating specifically to the City of Orangeburg do not vary from the general constitutional provision and act above quoted, save in the minor details as to proportionate costs to be assumed by the municipality and the consent of the requisite proportion of citizens. The construction of the two constitutional amendments and acts are, therefore, subject to the same rules.

 The Supreme Court of the State of South Carolina has fully and completely construed the rights and powers of municipalities in connection with the enforcement of liens for street improvements in the case of the Town of Cheraw v. Turnage, 184 S.C. 76, 191 S.E. 831. In that case the Town of Cheraw brought an equity proceeding, almost exactly similar to the case at bar, against the owners of certain properties in the Town of Cheraw. It sought to foreclose the liens. The defendants appeared and demurred on various grounds, among others, claiming that an equitable suit of this nature was not appropriate, but that the only method of enforcement was the summary one similar to that commonly used for the collection of taxes. The defendants further took the position that this was not a proceeding in rem. They also claimed that the imposition of the assessments and the attempted enforcement were unconstitutional. The court refused to sustain any of these contentions and as a result it is the settled law of South Carolina that municipal corporations may make assessments against abutting property owners for street improvements, provided of course all the terms of the constitutional amendments and laws and ordinances relative thereto are strictly followed. It is further settled that a municipality has the choice of two methods of enforcement. It may proceed by summary process similar to that usually used in the collection of taxes, and it may also proceed by a suit in equity. The second method was the one adopted by the Town of Cheraw and the court held that the municipality was within its right in bringing such a suit, and as a matter of fact, that it was perhaps the better method of enforcing the lien where there were conflicting rights and possibly various questions affecting the ownership of the property or the validity of the lien; the court taking the position that in a suit of that character all parties who had any interest could be brought in and if a decree were entered providing for the sale of the property a purchaser could be assured of a good title, whereas under the summary process there was often doubt as to whether the right parties were notified or the proceedings were regular. The court distinctly stated that a suit of this character was a proceeding in rem and not in personam. In the case above cited the court takes care to point out that a street improvement assessment is a lien and not a tax and cites numerous authorities to sustain that position. In South Carolina taxes, even those on real estate, are primarily enforceable against the personalty of the tax payer. But that is untrue of a street improvement assessment. There is no personal liability, but it

is wholly and entirely a lien on a tract of land itself and the municipality must look to the land and not to the owner. Proceedings to enforce a street improvement are entirely in rem. Weatherly v. Medlin, 141 S.C. 290, 139 S.E. 633; Beatty v. Wittekamp, 171 S.C. 326, 172 S.E. 122; Sutton v. Town of Fort Mill, 171 S. C. 291, 172 S.E. 119.

The case at bar appears to be almost identical with the case of the Town of Cheraw v. Turnage. In that case the court pointed out, not only its power to take jurisdiction of a case of that kind, but that it was a most advantageous form of proceedings so that all parties in interest might be brought in or given leave to appear. In the instant case the plaintiff claims that having brought this case, which was removed to the United States Court, it later ascertained that the defendant was not the owner of the land in question, but merely a lessee. When such discovery was made the City instituted the summary process hereinabove referred to and at the same time instituted a new suit against a number of railroad corporations, some of which were no longer in existence and had been merged into another corporation. The plaintiff claims that this action was taken because it was advised that the Southern Railway Company was not the true owner. However, it certainly was advised that the Southern Railway had a very decided interest in this land since it was actually in occupancy thereof, using it for its railroad purposes, and was the holder of a lease which was to run for a term of nine hundred and ninety-nine years from 1902. This lease was on record in the Clerk of Court's office for Orangeburg County where it could be found in Book 39, page 650, and was, therefore, notice to the world including of course the parties in this case. If it became necessary to take action against these other parties as alleged owners, why not make them additional parties defendant in this cause? Under the practice in this court amendments to bring in proper parties are frequently allowed. The Rules of Civil Procedure provide that "leave shall be freely given when justice so requires". Rule 15(a), 28 U.S.C.A. following section 723c. The plaintiff would have had no difficulty in bringing these additional parties into the cause. But it failed to exercise this privilege and commenced a new action in the State Court, deliberately omitting as a party the Southern Railway Company, the defendant in this case, the party in possession of the premises under a lease which yet had over nine hundred and fifty years to run. It is difficult to escape the inference that the new suit was primarily for the purpose of getting the case back into the State Court.

This court has no desire to acquire jurisdiction of matters not properly before it. But it will not shirk the responsibility of passing upon matters over which it has acquired jurisdiction and which it is duty bound to adjudicate.

There is no doubt that this is an action in rem. Either the State Court or the Federal Court could take jurisdiction of it, provided of course the other requisite jurisdictional matters were in issue. The case first brought, which was removed to this court, was one involving more than three thousand dollars and was between citizens of different states and, therefore, this court properly acquired jurisdiction of the subject matter and of the res. Later the plaintiff brought another suit against other corporations, all of which, however, were either subsidiaries of or interlocked with each other and with the foreign corporation. If the first case had never been brought the State Court could have acquired and held jurisdiction. But where the same res is involved in separate suits the court first acquiring jurisdiction will hold the same.

" * * * It is settled that where a federal court has first acquired jurisdiction of the subject-matter of a cause, it may enjoin the parties from proceeding in a state court of concurrent jurisdiction where the effect of the action would be to defeat or impair the jurisdiction of the federal court. Where the action is in rem the effect is to draw to the federal court the possession or control, actual or potential, of the res, and the exercise by the state court of jurisdiction over the same res necessarily impairs, and may defeat, the jurisdiction of the federal court already attached. The converse of the rule is equally true, that where the jurisdiction of the state court has first attached, the federal court is precluded from exercising its jurisdiction over the same res to defeat or impair the state court's jurisdiction.

" ' * * * They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and when one takes into its jurisdiction a specific thing, that

res is as much withdrawn from the judicial power of the other, as if it had been carried physically into a different territorial sovereignty.' * * *

" 'It is settled that, when a state court and a court of the United States may each take jurisdiction of a matter, the tribunal whose jurisdiction first attaches holds it, to the exclusion of the other, until its duty is fully performed, and the jurisdiction involved is exhausted. * * * The rule is not only one of comity, to prevent unseemly conflicts between courts whose jurisdiction embraces the same subject and persons, but between state courts and those of the United States it is something more. "It is a principle of right and law, and therefore of necessity. It leaves nothing to discretion or mere convenience." Covell v. Heyman, 111 U.S. 176, 4 S.Ct. 355, 28 L.Ed. 390. The rule is not limited to cases where property has actually been seized under judicial process before a second suit is instituted in another court, but it applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in all suits of a like nature. Farmers' Loan & Trust Co. v. Lake Street El. R. Co., supra [177 U.S. 51, 20 S.Ct. 564, 44 L.Ed. 667]; Merritt v. [American] Steel-Barge Co. [8 Cir.] 24 C.C.A. 530, 79 F. 228, 49 U.S. App. 85.' "

Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 81, 67 L.Ed. 226, 24 A.L.R. 1077.

"The possession of the res vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and for the time being disables other courts of co-ordinate jurisdiction from exercising a like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons.

"Nor is this rule restricted in its application to cases where property has been actually seized under judicial process before a second suit is instituted in another court, but it often applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in suits of a similar nature where, in the progress of the litigation, the court may be compelled to assume the

possession and control of the property to be affected. The rule has been declared to be of especial importance in its application to Federal and state courts. Peck v. Jenness, 7 How. 612, 12 L.Ed. 841; Freeman v. Howe, 24 How. 450, 16 L.Ed. 749; Moran v. Sturges, 154 U.S. 256, 14 S.Ct. 1019, 38 L.Ed. 981; Central [Nat.] Bank v. Stevens, 169 U.S. 432, 18 S.Ct. 403, 42 L. Ed. 807; Harkrader v. Wadley, 172 U. S. 148, 19 S.Ct. 119, 43 L.Ed. 399."

Farmers' Loan & Trust Company v. Lake Street El. R. Co., 177 U.S. 51, 20 S.Ct. 564, 568, 44 L.Ed. 667.

In two rather recent cases arising in this district the United States and the State Courts found their jurisdiction invoked in matters affecting the liquidation and receivership of the Edisto National Bank. Certain trust estates and properties were involved in a suit instituted in the Court of Common Pleas for Orangeburg County. Another suit relating to other trusts and assets was instituted in the United States Court for this district. In each of these suits an attempt was made to ask that injunctions issue against proceedings in the other case. In each this was denied. In the case in the State Court, namely: Marchant v. Wannamaker, 176 S.C. 369, 180 S.E. 350, the Supreme Court of South Carolina bases its decision upon the cases hereinabove cited, namely: that of Kline v. Burke Construction Company and Farmers' Loan & Trust Company v. Lake Street Elevated Railway Company, supra. The Supreme Court of South Carolina determined that the matters actually in question in the suit brought in the State Court where such court had acquired jurisdiction of the res should be disposed of in the State Court and that the Federal Court should not interfere with the same, but as to all other matters jurisdiction was released to the Federal Court. The suit in the Federal Court went on appeal to the Circuit Court of Appeals for the Fourth Circuit. Wannamaker v. Eaves, 4 Cir., 79 F.2d 553. The Circuit Court of Appeals took the same view of the matter and directed that all matters pending in the suit in the State Court should be left there for adjudication, but that the State Court should be enjoined from proceeding with any other matters in connection with the liquidation of the bank other than those specifically involved in the suit in the State Court where the State Court had acquired jurisdiction of the res.

In other words, the respective decisions in the State and the Federal Courts follow the doctrines laid down in the Kline and the Farmers' Loan & Trust Company cases hereinabove referred to and cited. In the instant case the City of Orangeburg itself brought a suit against the Southern Railway Company for the enforcement of an alleged lien for street improvements and this case was duly and properly removed to the Federal Court and is undecided and still pending in this court. The court has acquired jurisdiction of the matters in dispute which relate to alleged liens against certain property named and described in the Complaint. Therefore, this court has acquired jurisdiction of the res, the suit being a proceeding in rem and the doctrine laid down in the cases hereinabove cited distinctly applies.

In my opinion the City of Orangeburg can not institute another action or take any steps towards the enforcement of this alleged lien against this same property in any proceeding other than the one that is now pending in this court and this court has power to enjoin any further proceeding in the State Court or any other court and also to enjoin the officials of the City of Orangeburg from taking any further steps with a view to summary process to enforce the alleged lien.

In passing upon the question of whether or not the City of Orangeburg and the Tax Collector, F. M. DeMars, are in contempt, I have given due consideration to the return and the facts presented when the case was orally argued before me. Strictly speaking I think they have been guilty of a technical contempt, but I am convinced that it was not intentional or designed to attack the dignity of this court. It is true that the attempt to bring a proceeding in the State Court and the attempt to execute summary process may have been designed to put the matter in the jurisdiction of the State Court and to defeat the jurisdiction of this court. I am of the opinion, however, that if there was a contempt of court it was technical and I feel that the respondents have sufficiently purged themselves and the contempt proceedings may be dismissed.

In view of the opinion hereinabove expressed an order will be entered directing that the parties in the instant suit proceed with the matters now pending and that the case be brought to trial in due time and that the plaintiff, the City of Orangeburg,

and also the Tax Collector, F. M. DeMars, be enjoined from taking any further steps or proceeding in any manner in attempting to enforce the alleged lien for street improvements in the case heretofore instituted in the Court of Common Pleas for Orangeburg County, entitled the City of Orangeburg v. The Southern Railway Company, Carolina Division, South Carolina and Georgia Railroad Company, the South Carolina Railroad Company and the South Carolina Railway Company, or by summary process or in any other manner or proceedings, save only, in the instant case. The order will further provide that the rule, so far as it attempts to adjudge the City of Orangeburg and F. M. DeMars in contempt of this court be dismissed, since this court is of the opinion that they have sufficiently purged themselves of any intentional contempt and the order of injunction will be sufficient to control them from any further attempts to take any steps or proceedings in this matter other than as hereinabove indicated.