**Philip AGEE, Plaintiff,**

v.

**CENTRAL INTELLIGENCE AGENCY et al., Defendants;**

**United States of America, Intervening Defendant/Counterclaimant.**

**Civ. A. No. 79–2788.**

United States District Court, District of Columbia.

Oct. 2, 1980.

Memorandum and Order, Modified Permanent Injunction Nov. 21, 1980.

Melvin L. Wulf, New York City, William H. Schapp, Mark H. Lynch, Washington, D. C., for plaintiff.

Barbara S. Woodall, Andrew M. Wolfe, Dept. of Justice, Washington, D. C., for intervening defendant/counterclaimant.

## MEMORANDUM AND ORDER

GESELL, District Judge.

As a condition of his employment with the CIA, Agee entered into a Secrecy Agreement with that agency which limited his right to disclose intelligence information. Alleging that the agreement had been violated and that Agee threatened to violate it again in the future, the United States intervened in this Freedom of Information Act suit. It seeks an order that would return to the Government all sums earned by Agee from certain prior writings disseminated in violation of the Secrecy Agreement and to enjoin further breaches of the agreement. The matter is before the Court on cross–motions for summary judgment which were fully briefed and argued.

In his Secrecy Agreement signed on July 22, 1957, Agee stated that he would "undertake not to publish or participate in the publication of any information or material relating to the Agency, its activities or intelligence activities generally, either during or after the term of [his] employment by the Agency without specific prior approval by the Agency." See Ex. A, Gambino Affidavit. Agee's CIA employment ceased on November 22, 1968. At no time has he been released from this undertaking.

Two essential facts are undisputed. Agee does not deny that he has published books containing intelligence information relating to CIA activities without prior submission to the agency and in violation of the Secrecy Agreement,[1] nor does he deny that he intends to continue his work as an author and journalist, writing on intelligence activities, without complying with the Secrecy Agreement. Moreover, the validity of the standard Secrecy Agreement which Agee executed has been strongly upheld in a recent decision of the Supreme Court, Snepp v. United States, 444 U.S. 507, 100 S.Ct. 763, 62 L.Ed.2d 704 (1980).[2]

Opposing the proposed order vigorously, Agee offers two affirmative defenses. First, he asserts that the United States comes before this Court with "dirty hands" and should not be granted the equity relief sought. Second, he contends that he is the victim of impermissible "discriminatory enforcement" because the United States has allegedly chosen to litigate against him on the basis of the content of his writings, an impermissible criterion for government action, while choosing not to prosecute individuals whose writings are not so unfavorable to the Agency.

█ Agee's "dirty hands" argument lacks merit. In a lengthy affidavit, Agee recites a litany of supposed wrongs allegedly perpetrated by government representatives against plaintiff beginning in 1971, three years after plaintiff left the CIA and about the same time that plaintiff began his activities against the agency. But even if these wrongs occurred, which is disputed, they would not foreclose the relief sought by the United States here. In invoking the "dirty hands" doctrine, it is necessary that the wrongs complained of have a close nexus to the cause of action. See, e. g.; Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245, 54 S.Ct. 146, 147, 78 L.Ed. 293 (1933); Neal–Cooper Grain Co. v. Kissinger, 385 F.Supp. 769, 778 (D.D.C.1974). There is no such nexus here. Plaintiff had long since left the agency when these incidents occurred and the alleged wrong–doing by the agency since 1971 is not sufficiently related to Agee's failure to comply with the Secrecy Agreement.

█ The discriminatory enforcement argument, however, is more substantial. It is clear that the Government could not enforce the Secrecy Agreement solely on the grounds of sex or of race, i. e., by enforcing it only against women or against blacks. Similarly, it is certain that the Government cannot use enforcement of the Secrecy Agreement for the sole purpose of suppressing speech that is unfavorable to the agency. Agee contends that the agency's actions support his claim that the Government's present motion is primarily motivated by the agency's disagreement with his views. This is sharply denied. On the limited facts submitted by the parties it is difficult, however, to determine to what extent, if any, enforcement of the agreement against Agee is based on the impermissible ground that the agency was offended by the unfavorable material Agee has written.

1. The United States points to two books among Agee's many publications, Dirty Work: The CIA in Western Europe and Dirty Work II: The CIA in Africa. Agee was not the sole author of either book. He acknowledges having written a third book, Inside the Company: CIA Diary, that also was published without having been submitted for clearance.

2. The Agreement also was considered in the lower court opinion in Snepp, see United States v. Snepp, 595 F.2d 926 (4th Cir. 1979), and in Alfred A. Knopf, Inc. v. Colby, 509 F.2d 1362 (4th Cir.), cert. denied, 421 U.S. 992, 95 S.Ct. 1555, 43 L.Ed.2d 772 (1975), and United States v. Marchetti, 466 F.2d 1309 (4th Cir.), cert. denied, 409 U.S. 1063, 93 S.Ct. 553, 34 L.Ed.2d 516 (1972).

The United States argues that Agee is in a category by himself with regard to enforcement of the Secrecy Agreement, and that his conduct has been egregious and totally in disregard of the agreement, to the severe detriment of the United States. There is no dispute that Agee has openly flouted his refusal to submit writings and speeches to the CIA for prior approval, and has expressed a ·clear intention to reveal classified information and bring harm to the agency and its personnel.[3] Thus the risks which attend Agee's continuing refusal to abide by the agreement are undoubtedly far greater than the risks posed by many others covered by the agreement.

Agee, however, has presented evidence indicating that the CIA's past enforcement record bears a considerable correlation with the agency's perception of the extent to which the material is favorable to the agency. A reading list of books concerning the CIA, prepared by the CIA itself for recruitment purposes, noted five works as "more critical of the Agency." Four of these works have spawned suits by the Government to enforce the agreement, whereas no suits have been filed against other authors whose works were not listed as "more critical," even though some of those authors concededly did not submit their material for prepublication review. Plaintiff thus has raised a factual issue as to whether the Government's past enforcement has been clouded by content considerations rather than wholly legitimate concerns for security.

In view of the foregoing, the Court has determined that it would not be appropriate, on these motions for summary judgment, to impose a constructive trust over the proceeds of Agee's two books, or to order an accounting. Not only is the civil law of discriminatory enforcement uncertain but there are, as noted, unsettled factual issues that can only come clear through time—consuming discovery, if the issues were to be pursued. The past, however, is no mirror of the future. The agency has recently prepared a policy statement on its prepublication review program that demonstrates a sensitivity to First Amendment concerns. Backed by *Snepp*'s endorsement, the agency currently is carrying out a far more systematic and organized program for enforcing its Secrecy Agreement rights. There is no showing that anyone who announces in advance an intention to ignore the agreement and who has egregiously violated it in the past will not be subjected to an enforcement action. The agency, moreover, expressly states that "[a]pproval will not be denied solely because the subject matter may be embarrassing to or critical of the Agency." Furthermore, the "expressed or presumed attitude of a person toward the United States Government or the Agency is not a factor" in determining whether a person suspected of violating the Secrecy Agreement will be recommended for prosecution. (*See* Regulation HR6–2 and Policy of Enforcement, attached to Turner's Affidavit.)

Accordingly, the Court believes that it is entirely appropriate under all the facts and circumstances of this case to issue an injunction against Agee requiring his full compliance with the Secrecy Agreement in the future. Agee has shown a flagrant disregard for the requirements of the Secrecy Agreement, justifying this Court's action to require future compliance and to protect the security of the United States.

The motion for summary judgment filed by the United States is granted in part and a permanent injunction enjoining Agee from further breaches of his Secrecy Agreement shall issue in the form attached. In

---

**3.** The Government notes, in particular, a press release issued by plaintiff from London on October 3, 1974, in which plaintiff stated:

Today I announced a new campaign to fight the United States CIA wherever it is operating. This campaign will have two main functions: First, to expose CIA officers and agents and to take the measures necessary to drive them out of the countries where they are operating; secondly, to seek within the United States to have the CIA abolished. *See* McMahon Affidavit at 3.

It should also be noted that Agee is seeking release of approximately 20,000 documents from the CIA alone in this action, obviously to support his continuing campaign.

all other respects the motions of both parties are denied.

SO ORDERED.

## ON MOTION TO AMEND PERMANENT INJUNCTION

Agee has moved this Court to amend the Permanent Injunction against him entered by this Court on October 2, 1980. He contends that the injunction, which requires him to comply with the Secrecy Agreement he executed with the CIA in 1957, is overbroad, exceeding even the relief requested by defendant, and fails to include certain safeguard provisions approved by the Supreme Court in the similar case of *Snepp v. United States*, 444 U.S. 507, 100 S.Ct. 763, 62 L.Ed.2d 704 (1980). Defendant United States opposes Agee's motion, although defendant enters no objection to the safeguard provisions requested by Agee, namely, that any review by the CIA of submitted material be completed within thirty days of submission and that approval be withheld only for information which the CIA determines to be classified.

The Court has carefully considered the arguments of the parties and has determined that some amendment of the injunction would be useful in order to reassure Agee that his imagined fears are unwarranted.

■ Agee contends that the injunction should not extend to oral speech or to information learned outside his CIA employment. The Court cannot accept these contentions. First, it is clear that the Secrecy Agreement executed by Agee in 1957 was not limited to written works nor to information learned during employment. Therefore the injunction as written goes no further than the obligation Agee already has incurred. Second, Agee has demonstrated an intent to violate that Agreement, thus requiring this Court to enter the broadest permissible injunction. Third, Agee's conduct demonstrates a clear pattern of using oral statements as well as written works to further his intention of undermining the work of the CIA. Fourth, the difficulty in unraveling the degree to which Agee's knowledge has come from that employment or otherwise, makes it essential that he not be the party to determine whether or not a given piece of information was learned during his CIA employment. Under these circumstances, this Court would be remiss if it entered an injunction limited in the manner Agee requests.

■ Nonetheless, the Court will amend the injunction to make clear that the activities conjured up by Agee in his brief—*i.e.*, reading a passage aloud from a book to another person, or telling his wife what a newspaper has reported—will not make him subject to contempt. Agee's concerns are far too farfetched. However, the injunction will be amended to state:

> Extemporaneous oral remarks that consist solely of personal views, opinions, or judgments on matters of public concern and that do not contain, or purport to contain, any direct or indirect reference to classified intelligence data or activities, are not subject to this injunction.

With regard to the safeguard provisions sought by Agee, the Court believes that inclusion of the provisions is redundant but in view of the fact that defendant does not oppose, the provisions will be included as Agee requests. Both parties agree that the provisions are express agency policy and have been endorsed, if not mandated, by reviewing courts. *See, e.g., Snepp v. United States, supra*; *United States v. Marchetti*, 466 F.2d 1309, 1318 (4th Cir.), *cert. denied*, 409 U.S. 1063, 93 S.Ct. 553, 34 L.Ed.2d 516 (1972). The Court assumed that all parties would conform to their own rules. Furthermore, if the CIA failed to comply with these requirements to the detriment of Agee, appropriate relief could have been sought. Nonetheless, the Court will amend the injunction to include the provisions as sought.

For the foregoing reasons, plaintiff's motion to amend the Permanent Injunction is granted in part and denied in part. The injunction, as amended, will read as set forth in the attached Modified Permanent Injunction, to be served in the same manner as the original Permanent Injunction.

SO ORDERED.

## MODIFIED PERMANENT INJUNCTION

This matter having been heard on cross-motions for summary judgment, and the Court having granted the United States a permanent injunction, now therefore it is hereby

ORDERED:

(1) That the plaintiff, Philip Agee, is permanently enjoined from further violation of the terms of his Secrecy Agreement with the Central Intelligence Agency executed July 22, 1957, and, in particular, is enjoined from disseminating, or causing to be disseminated, any information or material relating to the Central Intelligence Agency, its activities, or intelligence activities generally, without the express written consent of the Director of the Central Intelligence Agency or his representative, provided that the Agency review of submitted material be completed within thirty days of submission and that approval for dissemination be withheld only for information which the Central Intelligence Agency determines to be classified;

(2) That extemporaneous oral remarks that consist solely of personal views, opinions, or judgments on matters of public concern, and that do not contain, or purport to contain, any direct or indirect reference to classified intelligence data or activities, are not subject to this injunction;

(3) That plaintiff's counsel shall promptly serve plaintiff with a certified copy of this Order and shall promptly file with the Court proof of receipt by plaintiff of this Order; and

(4) That the Clerk of Court shall serve plaintiff with a certified copy of this Order by mailing the same to plaintiff at Schulterstrasse 81, Hamburg, Germany, by certified mail.