**BARNSTEAD BROADCASTING CORPORATION, Plaintiff,**

v.

**OFFSHORE BROADCASTING CORPORATION, Defendant.**

**Civ. A. No. 94–2167 (PLF).**

United States District Court, District of Columbia.

Oct. 21, 1994.

Lewis J. Paper, Charles B. Molster, III, and Carol A. Joffe, Washington, DC, for plaintiff.

Mary A. McReynolds, Washington, DC, for defendant.

**4**

Vincent J. Curtis, Jr., Rosslyn, VA, for intervenors.

## OPINION AND ORDER

FRIEDMAN, District Judge.

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. The Court provided Defendant a period of ten days from the date the Complaint and Motion were filed within which to file its Opposition. A hearing on Plaintiff's motion was held on October 19, 1994. BAF Enterprises, Inc. ("BAF") moved to intervene pursuant to Rule 24(a)(2), Fed.R.Civ.P., to protect its interest in this matter, and the Court will grant the motion to intervene.

Having fully considered the Complaint in this matter, Plaintiff's Memorandum of Points and Authorities and accompanying affidavit and exhibits, Defendant's Opposition and accompanying affirmations and exhibits, Plaintiff's Reply to Opposition, and the Intervenor's Memorandum of Law, and having provided counsel ample opportunity to fully argue their positions in open court, the Court will treat the pending Motion as one for a preliminary injunction. Plaintiff has demonstrated that it has a substantial likelihood of success on the merits, that it and BAF will be irreparably harmed if the preliminary injunction is not granted, that Defendant will not be harmed if an injunction is granted, and that the public interest favors the grant of such an injunction. The Court therefore grants Plaintiff's Motion for a Preliminary Injunction.

## I. *Background*

Plaintiff, Barnstead Broadcasting Corporation ("Barnstead"), has filed a complaint for breach of a 1990 written contract between Barnstead and the Defendant, Offshore Broadcasting Corporation ("Offshore"), for breach of a 1994 oral agreement, for fraudulent misrepresentation and failure to disclose material facts, and for interference with a business relationship. For purposes of the current motion, the Court considers only Count I of the Complaint alleging breach of the 1990 written contract.

Plaintiff alleges that in 1985 William A. Barnstead purchased the stock of Metrovision, Inc. ("Metrovision"). Metrovision held a construction permit for the construction of a new television station in New Bedford, Massachusetts. The construction permit was due to expire in September of 1986, but Metrovision filed an application with the Federal Communications Commission ("FCC") to extend the time to construct the television station. Defendant Offshore, which held an FCC construction permit to build a television station on Block Island, Rhode Island, filed an Informal Objection with the FCC to Metrovision's application for an extension of time. In 1989, while this objection was still in litigation before the FCC, Offshore applied to extend its own construction permit for the Block Island station. Metrovision filed an Informal Objection to Offshore's application.

On November 20, 1990, Metrovision and Offshore executed the written Agreement which is the subject of this lawsuit. Under that Agreement, the parties agreed to withdraw their respective Objections to one another's permit extension applications. They also agreed to refrain from filing further objections concerning the construction of their respective stations and not to interfere "in any way" with the construction and operation of the other's station. The obligations of each party were set forth in virtually identical language in the November 1990 Agreement. Because it is crucial to the decision now before this Court, the Court quotes in full the paragraph of the November 1990 agreement that sets forth Defendant Offshore's obligations:

Offshore agrees that it shall withdraw all of its pending oppositions to Metrovision's pending application at the Commission. It also agrees that it shall not file any pleading or document of any kind with any state or Federal court, or with any local, state, or Federal administrative agency or body regarding the construction of Metrovision's station as proposed in BPCT–800131KI, as extended (with any subsequent modification thereof), nor shall it interfere in any way with the construction or operation of the station; provided, however, that the foregoing shall not preclude Offshore from

opposing any application filed by Metrovision to move the station's transmitter solely on the ground that (1) the Metrovision proposal would be short-spaced to Offshore's WOST–TV or (2) the Metrovision proposal would cause electrical interference as defined by the FCC's rules and regulations to Offshore's WOST–TV.

In accordance with the November 1990 Agreement, Metrovision and Offshore dismissed their respective objections to the other's extension application "with prejudice." In 1991, both Metrovision's and Offshore's extension applications were granted by the FCC, it is alleged, on the specific representation to the FCC that neither would pursue any further litigation against the other. In 1991, Metrovision, with the FCC's approval, assigned its construction permit for the television station to Barnstead. Barnstead subsequently obtained several extensions from the FCC on its construction permit. The current extension expires on October 21, 1994. Barnstead will have to seek a further extension unless, before that date, the FCC acts on the pending assignment application, discussed below, that was filed with the FCC on June 28, 1994.

On June 17, 1994, Barnstead and BAF Enterprises, Inc. executed an assignment agreement pursuant to which Barnstead agreed to assign its construction permit to BAF upon payment of $660,000 to Barnstead. The agreement between Barnstead and BAF also grants Barnstead the right to broadcast public affairs programs once a week for at least five years after the television station is constructed. The agreement further provides that if the assignment is not consummated by June 17, 1995, BAF has the unilateral right to terminate the agreement. Pursuant to applicable law and rules of the FCC, any such assignment of a construction permit must have the prior approval of the FCC. Therefore the agreement between Barnstead and BAF and an assignment application were filed with the FCC on June 28, 1994. At oral argument, it was represented by both parties that once the assignment application is ap-

proved, an assignee like BAF would automatically receive a twelve-month construction permit.

The assignment application was placed on the FCC's public notice on July 11, 1994. Petitions to deny were due to be filed no later than August 10, 1994, and no such petitions were filed. On or about August 18, 1994, however, Offshore filed an Informal Objection to the Barnstead assignment application.[1] Plaintiff alleges that Offshore's filing of the Informal Objection was in violation of the above-quoted paragraph of the November 1990 Agreement between Barnstead and Offshore, a breach of which Barnstead advised Offshore after the Informal Objection was filed. Plaintiff alleges that if Offshore's Informal Objection is not withdrawn there is a serious risk that the FCC's action on the application will be delayed beyond June 17, 1995, giving BAF the unilateral right to terminate its agreement with Barnstead. Plaintiff further alleges that as a result of Defendant's breach of contract Barnstead is at risk of losing the contract with BAF, including a right to broadcast the weekly one hour public affairs program for five years and the purchase price of $660,000.

For these and other reasons, Plaintiff seeks a preliminary injunction under which Defendant Offshore would be directed (1) immediately to withdraw its Informal Objection to the assignment application of Barnstead's construction permit to BAF; (2) to refrain from any interference with Plaintiff's assignment agreement with BAF and its approval by the FCC; and (3) to refrain from any further interference with construction of the television station by Barnstead and its assignee, BAF.

II. *Analysis*

■ According to the traditional formulation for a preliminary injunction in this jurisdiction, a movant is entitled to injunctive relief upon a showing (1) that it has a likelihood of success on the merits; (2) that mov-

---

1. Offshore initially alleged that it had standing to make the objection, but, six days later in a supplemental filing with the FCC, it acknowledged that it did not have standing to challenge the

assignment application because the Offshore television station does not overlap the proposed contour of the Barnstead station.

ant will suffer irreparable harm if the relief is denied; (3) that other interested parties will not suffer substantial harm if injunctive relief is granted; and (4) that the public interest favors the granting of relief or, at least, that the granting of relief is not adverse to the public interest. *National Wildlife Federation v. Burford,* 835 F.2d 305, 318–19 (D.C.Cir.1987); *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 842–44 (D.C.Cir. 1977); *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921 (D.C.Cir.1958). Further, when the other three factors strongly favor interim relief, a court may grant injunctive relief where movant has made out a "substantial case" on the merits rather than having demonstrated a likelihood of success; the necessary level or degree of possibility of success will vary according to the court's assessment of the other factors. *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d at 843. An order maintaining the status quo is appropriate where the public interest is served, denial of the requested relief would inflict irreparable injury on the movant and when little if any injury would befall the respondent. *Id.* at 844.

**A. *Likelihood Of Success On The Merits***

■ Plaintiff argues that it has a substantial likelihood of success on the merits in this case because the terms of the contract are absolutely clear, as is Defendant's flagrant breach thereof. Plaintiff claims that Offshore expressly agreed in the signed written Agreement of November 20, 1990 that, in perpetuity, it would "not file any pleading or document of any kind with any state or Federal court, or with any local, state, or Federal administrative agency or body regarding the construction of Metrovision's station as proposed in BPCT–800131KI, as extended (with any subsequent modification thereof)" and that Offshore also expressly agreed, in perpetuity, not to "interfere in any way with the construction or operation of the station." Plaintiff argues that the contract language is expansive in its terms precisely because it was designed to end forever the dispute between these two parties. Plaintiff says that, by filing an Informal Objection to the assign-

ment application, Defendant Offshore has breached the express terms of the November 1990 Agreement.

Defendant responds that the express terms of the Agreement do not prohibit the filing of an objection to the assignment application; they prohibit only the filing of objections to construction permits or for modification of construction permits. Defendant relies on the use of the term "construction" in the quoted provision and the absence of the term "sale" or "assignment" of construction permits. Defendant maintains that this language demonstrates that Offshore's obligations under the agreement are limited to its undertaking not to file an objection, pleading or other document regarding the construction by Barnstead and not to a commitment not to object to an assignment to another.

Defendant's construction of the language of the Agreement is much too strained. The Agreement does not relate only to construction permits or extensions thereof; indeed, it does not use the words "construction permit." Rather, it prohibits the filing of "any pleading or document *of any kind . . . regarding* the construction" of Metrovision's station. Offshore's Informal Objection to the assignment clearly is a document "regarding the construction" of Metrovision's station. Furthermore, the Agreement also obligates Offshore not to "interfere *in any way* " with the construction or operation of the station. The filing of an objection to the assignment is just such an interference. If, despite its plain import, the language of the Agreement were construed as Defendant suggests, Defendant would be permitted to use an alternative means to achieve the very end which it expressly agreed not to attempt under the November 1990 Agreement. The Agreement obligates Offshore not to file the Informal Objection to the assignment application in this case.

Finally, as Plaintiff pointed out at oral argument, the Informal Objection filed by Offshore makes quite clear that Defendant is challenging Barnstead's construction permit itself. After reciting in the Objection "the long history" of the construction permit and

extensions sought by Barnstead over the years, Offshore complains that the application to assign the construction permit was filed long after construction should have been completed. It notes the fact that no progress has been made on completion of construction since the grant of the last construction permit extension and cites "the lack of progress or inability to complete construction." Demonstrating what manifestly is its real goal in filing the Informal Objection, Offshore concludes its submission to the FCC with the words: "Offshore submits that the above-captioned assignment application must be denied and the permit for [Barnstead's station] cancelled." On this record and in view of the unambiguous language of the November 1990 Agreement, Plaintiff has demonstrated a substantial case regarding breach of the 1990 Agreement, indeed a likelihood of success on the merits of its claim. *See, e.g., R.C. McEntire & Co. v. Eastern Foods, Inc.,* 702 F.2d 471, 474 (4th Cir.), *cert. denied,* 464 U.S. 849, 104 S.Ct. 156, 78 L.Ed.2d 144 (1983).

■ Defendant's further argument on the merits is that granting the requested injunction would deprive Offshore of its constitutionally protected right under the First Amendment to petition the government for a redress of grievances, presumably relying on the *Noerr–Pennington* doctrine. *See United Mine Workers of America v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). Defendant argues that the Court has no authority to grant an injunction requiring Offshore to withdraw its Objection and to file no others because the First Amendment precludes such an equitable restraint on speech. The Court rejects this argument.

In *Snepp v. United States,* 444 U.S. 507, 100 S.Ct. 763, 62 L.Ed.2d 704 (1980), and in Judge Gesell's opinion for this Court in *Agee v. Central Intelligence Agency,* 500 F.Supp. 506 (D.D.C.1980), the courts upheld the validity, under contract principles, of a secrecy agreement, voluntarily entered into by CIA agents with their employer. In both those cases, the courts recognized that a party may contract away certain expressive rights. *See also R.C. McEntire & Co. v. Eastern Foods, Inc.,* 702 F.2d at 474. Not only did the Supreme Court in *Snepp* uphold the validity of the contract, it upheld the grant of an injunction against future violations of Snepp's pre-publication obligations under the contract. *Snepp v. United States,* 444 U.S. at 509, 100 S.Ct. at 765. Invoking yet another equitable remedy, the Court imposed a constructive trust on Snepp's profits from publication of his book without submitting it to a pre-publication clearance, as he had agreed to do by contract. *Id.* at 514–17, 100 S.Ct. at 768–69. As Messrs. Snepp and Agee were bound by their contractual obligations despite the asserted First Amendment implications, Offshore is equally bound by the terms of its contract, voluntarily entered, and may be enjoined from breaching it. *See Paragould Cablevision, Inc. v. City of Paragould,* 930 F.2d 1310, 1314–15 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 430, 116 L.Ed.2d 450 (1991); *Agee v. CIA,* 500 F.Supp. at 509. The First Amendment claim is no defense to Plaintiff's breach of contract claim or to its right to a preliminary injunction.

### B. *Irreparable Harm*

■ Plaintiff makes a compelling argument that it will be irreparably harmed if Defendant is not enjoined from violating the November 1990 Agreement by interfering with the construction of Metrovision's station. It notes that the construction permit Barnstead seeks to assign to BAF is the only valuable asset of Barnstead and that if the FCC does not approve the assignment before June 17, 1995 BAF has the unilateral right to terminate the assignment agreement. If BAF invokes its privilege to terminate, Barnstead will lose not only the $660,000 purchase price but the valuable opportunity to broadcast a weekly public affairs program. By contrast, Defendant argues that Barnstead will not suffer any harm unless and until the FCC denies the assignment application. As the history of the dispute between Plaintiff and Defendant over construction of the New Bedford facility demonstrates, however, Offshore's objections have had a significant effect on the FCC over the years, as has its

failure to object following the November 1990 Agreement. The delay engendered by Offshore's Objection is likely to be lengthy and to cause BAF to terminate the assignment agreement on June 17, 1995. Thus, Barnstead may well suffer irreparable harm regardless of whether the FCC ultimately approves the assignment application. *See Graphic Sciences, Inc. v. Int'l Mogul Mines, Ltd.,* 397 F.Supp. 112, 127 (D.D.C.1974).

■ Defendant argues that Barnstead has an adequate remedy at law for either denial of the assignment application by the FCC or the termination of the assignment agreement by BAF. Defendant ignores the fact that loss of the assignment opportunity involves more than the loss of $660,000 because Barnstead would also lose the opportunity to produce weekly public affairs programming, and the value of that opportunity cannot be remedied with money damages. *See Assoc. Producers Co. v. City of Independence, Mo.,* 648 F.Supp. 1255, 1258–59 (W.D.Mo.1986).

Intervenor BAF, the other party to the assignment agreement, has represented to the Court that it, too, will be irreparably harmed by any delay in the FCC ruling on the assignment application. Until FCC approval is finalized, BAF cannot obtain financing for the purchase. If BAF is unable to provide certain monies by the closing date, it will have materially defaulted on its obligations. BAF would lose a unique property. *See Assoc. Producers v. City of Independence, Mo.,* 648 F.Supp. at 1258–59. In addition, Barnstead currently appears as a contingent liability on BAF's books, a fact that affects BAF's other business dealings.

Offshore has really pointed to no significant harm it would suffer from the grant of injunctive relief other than the loss of "an important constitutional right," its right to petition its government, previously discussed by the Court. Offshore is not in the same market as Plaintiff, the contours of its broadcast market do not overlap that of Plaintiff's, and the assignment agreement between Barnstead and BAF has no impact on Defendant's ability to complete construction of its own station in its own market or on the future operation of that station.

### C. *The Public Interest*

■ Plaintiff argues that an injunction in this case will serve the public interest in two ways, while Offshore's attempt to prevent it thwarts the public interest. First, injunctive relief will provide the opportunity for a new television station in the New Bedford, Massachusetts area. If Offshore's objections to the assignment application are successful in delaying FCC approval and if BAF should choose to terminate the assignment agreement, it is unlikely that another purchaser would come forward and the FCC might cancel Barnstead's permit altogether. This would be adverse to the public interest. Second, an injunction would further the integrity of the judicial process by assuring that parties honor their contractual obligations, particularly when those contracts result from agreements to settle litigation or potential litigation. Plaintiff points out that Offshore got the benefit of the 1990 Agreement when Barnstead withdrew its objection to Offshore's construction permit in 1990, construction which apparently now has been completed, and that it is unfair for Offshore to try now to deny to Plaintiff the same benefit under the same contract. Plaintiff concludes that the public interest will be served by preventing Defendant from profiting from its own wrongdoing and by enforcing the parties' agreement. The Court agrees with Plaintiff's arguments.

Offshore argues that the public interest is not served by the Court injecting itself into administrative proceedings before the FCC. As a general proposition, of course the Court would agree, but that is not what is at issue here. What is at issue is the integrity of settlement agreements and the sanctity of contracts. With no countervailing public interest, the Court necessarily finds that the public interest favors the granting of such relief.

### III. *Conclusion*

For the foregoing reasons, and treating the Motion for Temporary Restraining Order and Preliminary Injunction as a Motion for Preliminary Injunction, it is hereby

ORDERED that BAF Enterprises, Inc.'s Motion to Intervene be and hereby is GRANTED; and it is

FURTHER ORDERED that Plaintiff's Motion for Preliminary Injunction be and hereby is GRANTED; and it is

FURTHER ORDERED that Defendant Offshore be and hereby is directed to (1) withdraw its Informal Objection to the assignment application of Barnstead's construction permit to BAF currently on file with the FCC (FCC File No. BAPCT–940628KJ) on or before the close of business on October 24, 1994; (2) refrain from any further interference with Plaintiff's assignment agreement with BAF and with its approval by the FCC; and (3) refrain from any further interference with construction of the television station by Barnstead and its assignee, BAF.

SO ORDERED.